## DUFFY v. STATE

[No. 158, September Term, 1965.]

*Decided July 19, 1966.*

The cause was argued before HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Morris Lee Kaplan,* with whom was *Michael Lee Kaplan* on the brief, for the appellant.

428

*Alan M. Wilner, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Appellant Floyd William Duffy, Jr. (Duffy) and a co-defendant, Lonnie Grier, were found guilty by Judge Edwin Harlan, sitting without a jury, in the Criminal Court of Baltimore, under indictments which charged both of them, *inter alia,* with carrying a deadly weapon and with attempted robbery. At the same trial Duffy was tried and found guilty under the second count of an indictment wherein he was charged with assault. After denial of motions for new trial, appellant was sentenced to five years for the attempted robbery, five years for the assault, and two years for carrying a deadly weapon, all three sentences to run concurrently.

On August 14, 1964, at about 8:00 in the evening, Robert Harper and Robert Johnson were walking through Oxford Alley north toward Pennsylvania Avenue, in Baltimore City, when they were accosted by a group of youths. A male member of that group, later positively identified in court by both Harper and Johnson as the appellant Duffy, held a knife at Harper's chest while another male, armed with brass knuckles, emptied Harper's pockets of thirty cents and relieved Johnson of a wrist watch he was wearing. An altercation then ensued, in the course of which a knife was plunged into Harper's chest. Harper testified that it was not yet dark when the attack occurred and he clearly saw the appellant stab him. While the assault was in progress, Patrolman Richard Nevin of the Baltimore police came upon the scene, whereupon the attackers hurriedly disbanded. Before fleeing, however, two of them looked directly at the oncoming policeman, and at that time he immediately recognized one of them as Betty Green and the other as Lonnie Grier, a boy the policeman had seen before, but whose name he did not know.

After the victims of the assault had been cared for, Officer Nevin resumed walking his beat. At about midnight he spotted Betty Green in a restaurant not far from the scene of the crimes

and she was immediately questioned about her involvement in the crimes. Acting upon information supplied by this girl, Officer Nevin testified that he associated Lonnie Grier's name with the boy he had recognized in the alley and he then went to Grier's address and arrested him. According to the policeman's uncontradicted testimony at the trial, Grier readily admitted, when he was arrested, that he was the "pocket man" involved in the robbery but denied that he had harmed anyone.

Continuing his investigation based on information supplied by Betty Green, Officer Nevin went to the home of the appellant and was there informed by Duffy's mother that he was spending the night at the home of his girl friend. Nevin went to that address and gained lawful admittance by the consent of Thelma Perry, who was a sister of the defendant Duffy's girl friend as well as a girl friend of Vincent Duffy, a brother of the appellant. Nevin, accompanied by another policeman, was then led by Thelma Perry to a third floor bedroom in which defendant Duffy was asleep.

Officer Nevin testified that upon entering the room he noticed a knife sticking out from under the mattress of Duffy's bed and, before arousing the latter, he withdrew it. He then woke Duffy and greeted him with the query "is this the knife you used in the fight?" According to Officer Nevin, Duffy's response was "no, I had it with me and I dropped it during the fight. Joe Louis picked it up. Then I got it back. I don't know who stabbed the guy." Appellant was then arrested and, according to Officer Nevin, later at the police station, appellant Duffy made another oral statement, not here at issue, wherein he admitted participation in the holdup. The State later introduced this knife into evidence at the trial, where it was identified by both victims as the knife held by Duffy during the holdup.

Betty Green was called by the State and she testified that she was the girl who participated in the robbery and the assault. She stated that the gang which robbed Messrs. Harper and Johnson was made up of the defendant-appellant Duffy, Lonnie Grier, Joe Louis, Vincent Duffy (brother of Floyd William Duffy and boy friend of Thelma Perry), and herself. The girl testified that "Duffy" had held a knife to Harper's chest; that

430

"Duffy" had directed her during the robbery to stand close to one of the victims to prevent him from getting away; and that "Duffy's brother" had been with her when she was questioned by Officer Nevin in the restaurant. Then, later in her testimony, in response to a question put to her by the trial judge, she revealed that the Duffy she was referring to as having held a knife to Harper's chest was Vincent Duffy and not the defendant; and then, on re-cross examination by appellant's counsel, she testified that the Duffy who had directed her to prevent the escape of a victim was also Vincent. She next testified that she hadn't seen Floyd William Duffy do anything in the alley, although she admitted that he, along with the other four, was in the alley for the same unlawful purpose.

The appellant took the stand in his own behalf and denied emphatically that he had anything to do with the crimes for which he was charged. At the time the crimes were said to have occurred, Duffy claimed that he was watching television at his girl friend's house, and that he had retired some time after 11:00 on the evening in question. The appellant testified that he was awakened from his sleep by Officer Nevin and then arrested, but he denied making the statement attributed to him by Officer Nevin. Moreover, when questioned by Officer Nevin about the incident, he testified that he told him, in effect, he didn't know what he was talking about, and further testified that he stuck to that story throughout the subsequent interrogation. Duffy denied on the stand that the knife had come from under the mattress on which he was sleeping but said that he had seen one of the officers pick it up from under a nearby dresser. He asserted that he told them that the knife wasn't his but that he had seen Joe Louis with it on one occasion.

Thelma Perry, called by the defendant, backed up Duffy's alibi and said that he was watching television at her house at the time the attack was said to have occurred. She further testified, however, that the appellant was still watching television with her at about 3:30 a.m. when the police officers arrested him.

On this appeal three questions are raised: (1) Should the police officer have been allowed to testify as to the parol statement made to him when he first woke Duffy, inasmuch as the

officer admitted that he first did not either tell him what crime he was going to be charged with, or advise him of the right to remain silent and the right to have counsel present; (2) was the knife the product of an unlawful arrest and thus inadmissible into evidence against him; and (3) were the guilty verdicts against the "weight of the evidence."

We know of no case or principle of law, and we are referred to none, which compels a police officer to forecast what charge he might later place against an unarrested, or otherwise undetained citizen, before he can ask him a question. When the policeman asked defendant Duffy "is this the knife you used," Duffy was not then under arrest. As stated by Judge Horney, for the Court, in *McChan v. State,* 238 Md. 149, 157, 207 A. 2d 632: "When one is approached by a police officer and merely questioned as to his identity and actions, this is only an accosting and not an arrest." In *Cornish v. State,* 215 Md. 64, 67, 137 A. 2d 170, 172, an arrest was defined as "the detention of a known or suspected offender for the purpose of prosecuting him for a crime," and as noted in that case a detention has occurred only when there is a touching by the arrester or, absent that, when the arrestee is told or otherwise understands that he is under arrest and he submits. See also *Shipley v. State,* 243 Md. 262, 220 A. 2d 585, and cases therein cited. Under the circumstances of this case, the question was a proper one, and since there is no evidence or claim that the answer to it was elicited by use of either physical or psychological coercion, or that it was in any manner involuntarily given, the policeman was properly permitted to testify as to this oral statement.

An accosted suspect need not be advised that he has the right to the presence of counsel before the first question can be propounded because such a right does not exist. Nor must the State prove, in order that the response to such a question may come into evidence against the accused in court, that an accosted suspect was first advised that he has the right to remain silent. The exclusionary principles enunciated in *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda v. Arizona,* 384 U. S. 436, are not applicable to a confession gleaned from a suspect who is merely accosted by

the police, but deal instead with the safeguards which must be provided for an accused who is in police custody. In *Miranda* the term "custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Page 444 of *Miranda*.) Here the defendant was not in police custody nor is there evidence from which we could find that as of the time Duffy answered this question he had been, as of that moment, denied any freedom of movement or action.

In regard to the second question raised, the arrest is challenged on the theory that it was made both without a warrant [1] and without probable cause. The rule in Maryland is that a police officer may arrest a suspect without a warrant if he has probable cause to believe that a felony has been committed, and that the arrestee had committed it. See *e.g., Young v. State,* 234 Md. 125, 198 A. 2d 91; *Mulcahy v. State,* 221 Md. 413, 158 A. 2d 80. Probable cause exists where the facts and circumstances within the knowledge of the officer, or of which he has reasonably trustworthy information, are sufficient to warrant a reasonably cautious man in arriving at that particular conclusion. *Edwardsen v. State,* 243 Md. 131, 220 A. 2d 547, and cases therein cited at p. 135; *Edwardsen v. State,* 231 Md. 332, 190 A. 2d 84; *Young v. State, supra.* In this case, the arresting officer certainly had reasonable grounds to believe that a felony had been committed, since he came upon the scene of the assault and robbery and immediately questioned the victims. If the police officer's testimony was believed, as it could properly have been by the trial judge, he sought out both Lonnie Grier and defendant Duffy based on information which he got from Betty Green. In regard to Duffy, he had reasonable grounds to believe Betty Green because he had seen her at the scene of the crimes and thus he knew she had first-hand information and also he knew her information had proved reliable when she gave him the name of Lonnie Grier and by use of that information he had located Grier and obtained an

---

1. The record does not indicate whether the officer had a warrant or not, and it will be presumed, for the purposes of this appeal, that he had none.

admission from him that he had participated in the robbery. With this background information, he asked Duffy "is this the knife you used in the fight." Since the police officer knew from talking to Harper and Johnson that the robbery and the assault had occurred synchronously and that a knife was one of the weapons used, an admission by Duffy that he knew that a man had been stabbed during a fight plus the admission that he dropped a weapon which could inflict such a stab wound, coupled with the information given to him by Betty Green which connected the defendant with the robbery of Messrs. Harper and Johnson, would lead a reasonably prudent man to reach the conclusion that Duffy had participated in that robbery. The appellant contends that Betty Green could not have given the police reasonably reliable information connecting Duffy with the crime because she, as a State's witness, testified that she hadn't seen the appellant do anything in the alley. She did testify that the appellant was at the scene of the crime and that the appellant, like the rest of the gang, was there for the same purpose. If it be assumed that the information she gave Officer Nevin must have necessarily been the same as she gave later at Duffy's trial, this would certainly be sufficient evidence to seek Duffy out to question him.

Appellant's next contention concerns itself with whether the evidence was sufficient to convict. He claims that it was not, mainly because the State's own witness (Betty Green) testified that she had not seen appellant with a knife or seen him do anything during the robbery, and, contrary to the testimony of Harper and Johnson, she testified that it was not the appellant, but Duffy's brother Vincent, who held a knife to Harper's chest. Inasmuch as the State produced Betty Green as its witness it could not impeach her, but it was not absolutely bound by her testimony. *Green v. State,* 243 Md. 75, 220 A. 2d 131. It was for the trier of facts to weigh the testimony of Betty Green and to determine her credibility. Ordinarily the trial judge's determination of such issues will not be disturbed on appeal. *McKenzie v. State,* 236 Md. 597, 603, 204 A. 2d 678. The appellant also stresses the fact that the State's witnesses differed as to how many people were involved in the attack, *i.e.,* Messrs. Harper and Johnson said that there were three, and

Officer Nevin and Betty Green said there were five. Judge Harlan was obviously aware of this discrepancy but it is not one which exculpated. the appellant, and it is difficult to see how it aids the defendant in regard to this contention. In *McCray v. State,* 236 Md. 9, 15, 202 A. 2d 320, this Court used the following language which is also apposite here:

> "For this Court to reverse a judgment entered in a case tried by the lower court without a jury, it must be shown that there was no legally sufficient evidence, or proper inferences therefrom, from which the court could find the accused guilty beyond a reasonable doubt."

Here there was such legally sufficient evidence based upon the identification, by both Messrs. Harper and Johnson, of the appellant as one who had participated in the robbery; the testimony of Mr. Harper that he had been stabbed by Duffy; the parol statement made to Officer Nevin before he had arrested him; testimony of Officer Nevin as to another statement made by the appellant after he was arrested wherein he admitted participation in the holdup; and testimony that he was in possession of the knife identified as the one used in the robbery and the assault. Although appellant denied that he was even at the scene of the crime and he did have an alibi witness, the trial court was under no obligation to believe either of them. *Green v. State, supra; Spencer v. State,* 235 Md. 129, 200 A. 2d 643; *Ponder v. State,* 227 Md. 570, 177 A. 2d 839.

*Judgments affirmed.*