FOSTER AND FORSTER *v.* STATE OF MARYLAND

[No. 267, September Term, 1973.]

*Decided July 26, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Thomas G. Bodie, Assigned Public Defender*, for appellants.

*Donald R. Stutman, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Clarence W. Sharp, Assistant Attorney General*, on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

At about 8:35 P.M., February 1, 1973, Herbert D. Siegel and his wife got out of their automobile in the driveway of their home at 3318 Old Post Drive. Siegel remained to lock the car, his wife advanced toward the entrance of the home; as Siegel walked around the car he heard the footsteps of a person running and a voice which yelled, "Hold it, hold it, hold it." Turning, he saw a "tall, slender-built young man, whose features were 'muffled' — as if covered by a stocking — pointing a rifle or shotgun from a distance of ten or twelve feet." A second man, within four or five feet of him, from across the hood of the car commanded him to turn over his wallet; when the wallet was placed on the hood of the car the unarmed assailant directed the removal of any money from the wallet and Siegel, across the hood of the car, handed-over approximately $35.00.

The evening was fairly misty and foggy; although there were no street lights on Old Post Drive, two outside post-lights were burning on the Siegel property, as were the lights on his neighbors' properties. The assailant to whom he had given the money and whose features he saw was "of medium build, approximately 5'9" to 5'10" in height, with long, dark hair and a black moustache."

After being assured by Siegel that he had no more money, the robbers fled afoot westward toward the adjacent

Stevenson Village Apartments. Mrs. Siegel promptly phoned the police and Siegel gave a description of his assailants over the phone. Within five minutes Siegel repeated the description to a county police officer who arrived at the home.

Officer Hojnowski, cruising in a police car in the vicinity of Old Post Road, at 8:39 P.M. heard over the police radio a report of the robbery and a description of two white males running afoot toward the Stevenson Village Apartments. As he drove toward the apartments he noticed a 1969 Chevrolet containing two front-seat occupants driving westward on Old Post Road. Reversing the course of his police car and activating his signal he stopped the automobile on Old Post Road approximately 150 feet eastward of Stevenson Road. Alighting from the vehicle as the officer approached, the operator, unsolicitedly, asked if there was "any trouble", stating that he "was lost." In addition to a white female seated on the right front seat the officer observed another white male "slouched down" — practically on the rear floor of the vehicle. The appellant Forster identified himself as the operator of the vehicle which was owned by the female passenger. The man "slouched" on the rear floor [Foster] did not then identify himself.

Cpl. Litchfield, having heard over his police radio that the vehicle had been stopped by Officer Hojnowski, went to the Siegel residence, advised Siegel that the police had stopped a "suspect vehicle" and requested that Siegel accompany him to where the vehicle was stopped — about one block westward from the Siegel home. En route there was no conversation between Siegel and the corporal concerning the identity of the assailants — Siegel spoke about his combat experiences as a naval officer, but that he had never before had a gun pointed directly at him. When they arrived at the stopped vehicle there were four police cars parked in the vicinity.

Siegel testified that when he was requested to accompany the police to the scene of the stopped vehicle he was told that they had "picked up two people that may fit the description [which he gave] and would he come to try to identify them";

that when he confronted the persons at the stopped automobile — within approximately ten minutes of the robbery — he could have given a positive identification at that time of the man to whom he had handed the money — had he been there so asked by the police, but the police were concerned "about securing the rights of the alleged suspects." He further testified that "the dark haired one to whom he had handed the money was there, standing, looking right at him." Siegel also testified that the other man, the taller man, was "slouching on the fender of the [stopped] car." It was only after he arrived at the Garrison Police Station that the officers took a report from him concerning his identification. He made an in-court identification of the appellant Foster, sans moustache. He could not positively identify the appellant Forster, by his features, but in height stated that he was similar to the assailant who held the gun on him.

After Siegel had testified, counsel for the appellants moved to strike his testimony as to the in-court identification "under the case of *Stovall v. Denno*" and the motion was denied.

Although Cpl. Litchfield testified that at the confrontation scene Siegel stated that the clothing worn by Foster fit the clothing worn by the subject who held him up, and that the physical features of the subjects were the same, he did not there make a positive identification, Officer Nash testified that Siegel stated at the scene that Foster definitely looked like the man to whom he had handed the money and, from the physical build of Foster, he was the one who had held the gun.

After the appellants were placed under arrest a search of the trunk of the vehicle with the consent of the owner-passenger revealed a .12 gauge shotgun and a box of shotgun shells.

From their convictions of robbery with a dangerous and deadly weapon following a non-jury trial in the Circuit Court for Baltimore County (Raine, J.) and the sentences imposed thereon, each appellant appealed. In an unreported per curiam, *Foster and Forster v. State* [No. 188, Sept.

Term, 1973, decided November 12, 1973], the Court of Special Appeals affirmed their convictions and on the authority of that court's holdings in *Billinger v. State*, 9 Md. App. 628, 267 A. 2d 275, *cert. denied*, 259 Md. 729 (1970), rejected the contention made that the identification procedure employed by the police was improper. We granted a writ of certiorari limited to the issue of whether the identification procedure followed by the police at the time the appellants were apprehended was proper. We affirm.

In *Basoff v. State*, 208 Md. 643, 119 A. 2d 917, (1956), our predecessors established as an evidentiary test for the admissibility of an extra-judicial identification, circumstances "precluding suspicion of unfairness or unreliability." *See also Johnson v. State*, 237 Md. 283, 289, 206 A. 2d 138 (1965); *Proctor v. State*, 223 Md. 394, 164 A. 2d 708 (1960); *Judy v. State*, 218 Md. 168, 146 A. 2d 29 (1958). *See also* Annot., 71 A.L.R.2d 449 (1960).

In 1967 the United States Supreme Court in a trilogy of opinions in *United States v. Wade*, 388 U. S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149, *Gilbert v. California*, 388 U. S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178, and *Stovall v. Denno*, 388 U. S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199, brought the test of the admissibility of such extra-judicial identifications within the protection of the sixth and fourteenth amendments to the United States Constitution. In both *Wade* and *Gilbert* that Court held that a post-indictment line-up was a "critical stage" of the proceedings which, when conducted without notice to, or the presence of, counsel was in violation of the defendant's right to counsel under the sixth amendment. The Court held in *Wade* that it was error to have admitted an in-court identification without first determining whether such identification was tainted by the illegal line-up procedure, or had an origin independent thereof.

In *Wade* Mr. Justice Brennan, who delivered the majority opinion for the Court, wrote:

> "But the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly

riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identification." *Id.* 388 U. S. at 228.

In reasoning that the respondent's rights under the sixth amendment were violated, he stated:

"Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was 'as much entitled to such aid [of counsel] . . . as at the trial itself.' " *Id.* 388 U. S. at 236-37. (Footnote omitted.)

In *Gilbert* the Court found: "The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error. *United States v. Wade, supra.*" *Id.* 388 U. S. at 272. Again, Mr. Justice Brennan, for the majority, stated:

"Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup. In the absence of legislative regulations adequate to avoid the hazards to a fair trial which inhere in lineups as presently conducted, the desirability of deterring the constitutionally objectionable practice must prevail over the undesirability of excluding relevant evidence." *Id.* 388 U. S. at 273.

In *Stovall v. Denno, supra,* the Court held that the exclusionary rules promulgated in *Wade* and *Gilbert* were to

have prospective application only, but recognized nonetheless that a confrontation not barred by *Wade* and *Gilbert* may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" that he [defendant] was denied due process of law. *Id.* 388 U. S. at 302.

In *Stovall* the wife of a physician, who had been stabbed to death, had also been stabbed repeatedly and was hospitalized. The police found evidence at the assault scene which was traced to the petitioner. Upon his arrest the following day his arraignment was postponed to permit the retention of counsel; in the interval the police took him, handcuffed to a police officer, and accompanied by four other police officers and two members of the prosecutor's staff, to the hospital room where the witness was recuperating. She identified him. It was contended that this confrontation without the assistance of counsel was made under circumstances which "unfairly focused the witness' attention on [the defendant] as a man believed by the police to be the guilty person."

Concerning the effect of the decisions in *Wade* and *Gilbert,* Mr. Justice Brennan, writing for the majority of the Court, stated:

> "*Wade* and *Gilbert* fashion exclusionary rules to deter law enforcement authorities from exhibiting an accused to witnesses before trial for identification purposes without notice to and in the absence of counsel. A conviction which rests on a mistaken identification is a gross miscarriage of justice. The *Wade* and *Gilbert* rules are aimed at minimizing that possibility by preventing the unfairness at the pretrial confrontation that experience has proved can occur and assuring meaningful examination of the identification witness' testimony at trial." *Id.* 388 U. S. at 297.

In holding that the confrontation conducted in the hospital room was not "so unnecessarily suggestive and conducive to irreparable mistaken identification" that it constituted a denial of due process of law, he continued:

"The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, and the record in the present case reveals that the showing of Stovall to Mrs. Behrendt in an immediate hospital confrontation was imperative." *Id.* 388 U. S. at 302. (Footnote omitted.)

The Court adopted with approval the observations of the United States Court of Appeals in the case, that Mrs. Behrendt was the only person who could possibly exonerate Stovall, that no one knew how long she might live, that faced with the responsibility of ascertaining the identity of the attacker and the need for immediate action, the police had adopted the only feasible procedure.

Save and except for circumstances factually similar to those in *Stovall* it came to be held, that notwithstanding that the holdings of *Wade* and *Gilbert* involved post-indictment line-ups, the exclusionary rules announced by *Wade* and *Gilbert* were applicable as well to a line-up conducted before indictment and to other pre-trial confrontations. *Palmer v. State*, 5 Md. App. 691, 249 A. 2d 482 (1969). In *Palmer* Judge Orth (now Chief Judge), for the Court of Special Appeals, stated:

"We think it necessarily follows that the rules of *Wade* and *Gilbert* apply also to a lineup conducted before indictment and to other pretrial confrontations within the meaning of *Tyler*.[1] We again note that in *Stovall*, at 300, the Court said

---

1. Tyler v. State, 5 Md. App. 265, 246 A. 2d 634 (1968), *cert. denied*, 252 Md. 733 (1969), *cert. denied*, 405 U. S. 1039 (1972), in which it was held that Wade was applicable to only those pre-trial confrontations which are not subject to fair and meaningful objective review later at the trial, and that the rationale of the Wade and Gilbert decisions was inapplicable to confrontations made at a public preliminary hearing presided over by a judicial officer.

that *Wade* and *Gilbert* affect ' * * * all future cases *which involve confrontations for identification purposes* conducted in the absence of counsel * * *.' (emphasis supplied). It did not limit their affect to 'post-indictment lineups.' . . . ." *Id.* 5 Md. App. at 696, 249 A. 2d at 486.

In *Smith v. State,* 6 Md. App. 59, 250 A. 2d 285, *cert. denied,* 254 Md. 720 (1969), *cert. denied,* 397 U. S. 1057 (1970), Judge Orth again for the Court of Special Appeals, concerning the holdings in *Palmer* and in *Tyler,* stated:

"We found that the rules of *Wade* and *Gilbert* apply to line-ups, both pre-indictment and post-indictment, and to other pre-trial confrontations 'that are not subject to fair and meaningful objective review later at the trial.' . . . *Wade* and *Gilbert* were founded on the constitutional right to counsel and they hold that a confrontation within their meaning was a critical stage of the proceedings. Therefore, absent a waiver of the right, such confrontation without the presence of counsel for the accused was illegal. They then fashioned exclusionary rules of evidence of identification made at an illegal confrontation. . . . ." *Id.* 6 Md. App. at 64-65.

"*Wade* and *Gilbert,* therefore, affect the rules previously followed in this State with respect to the admissibility of evidence as to a judicial or extra-judicial identification only as to personal confrontations between the witnesses and the accused declared by those opinions to be illegal in the absence of counsel. It is only then that the exclusionary rules would apply in determining the admissibility of such evidence." *Id.* 6 Md. App. at 65, 250 A. 2d at 289.

Concerning the effect of the holdings in *Stovall,* he stated:

"But the Court said that it was a recognized ground of attack upon a conviction, independent of any

right to counsel claim, that a pre-trial confrontation was 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process of law. Such a claimed violation of due process of law depends on the totality of the circumstances surrounding it. Although the Court recognized that the circumstances of a confrontation may result in a denial of due process of law, it found, [in *Stovall*] on the totality of the circumstances surrounding the confrontation there, that due process had not been denied. It did not enunciate exclusionary rules applicable when there is such a denial, but we think it follows that when a confrontation is illegal, whether by the denial of the constitutional right to counsel or the constitutional right to due process of law, the same exclusionary rules would apply. We hold that when a pre-trial confrontation is found to be illegal by the denial of due process of law, the exclusionary rules, enunciated in *Wade* and *Gilbert*, as hereinbefore set out, are applicable." *Id.* 6 Md. App. at 65-66, 250 A. 2d at 289-90.

Thereafter, and before the decision of the United States Supreme Court in *Kirby v. Illinois*, 406 U. S. 682, 92 S. Ct. 1877, 32 L.Ed.2d 411 (1972), the holdings in *Wade-Gilbert* were applied consistently in this State to pre-trial identifications without regard to whether the confrontation was post-indictment or pre-indictment. *See Watson v. State*, 7 Md. App. 225, 255 A. 2d 103 (1969); *Simon v. State*, 7 Md. App. 446, 256 A. 2d 348 (1969), *cert. denied*, 256 Md. 748 (1970); *Joyner v. State*, 7 Md. App. 692, 257 A. 2d 444 (1969), *cert. denied*, 257 Md. 734 (1970); *Cook v. State*, 8 Md. App. 243, 259 A. 2d 326 (1969); *McChan v. State*, 9 Md. App. 317, 264 A. 2d 133, *cert. denied*, 258 Md. 729 (1970); *Williams v. State*, 11 Md. App. 607, 275 A. 2d 522, *cert. denied*, 262 Md. 751 (1971); *Vernon v. State*, 12 Md. App. 430, 278 A. 2d 609, *cert. denied*, 263 Md. 722 (1971); *Davis v. State*, 13 Md. App. 394, 283 A. 2d 432 (1971), *cert. denied*, 264 Md. 746 (1972); *Robinson v. State*, 13 Md. App. 439, 283 A. 2d 637 (1971). The

issue of the applicability of *Wade-Gilbert* to pre-trial confrontations severely divided the state courts throughout the country; the majority adopting the reasoning of *Palmer v. State, supra,* and *Smith v. State, supra. See* 406 U. S. at 687 n. 5, 704 n. 14.[2]

In *Kirby v. Illinois, supra,*[3] the Supreme Court held that the per se exclusionary rules of *Wade-Gilbert* were to be applied only at or after the time that adversary judicial proceedings had been initiated against a defendant by way of formal charge, preliminary hearing, indictment, information or arraignment. After noting that the rationale of *Wade* and *Gilbert* "was that an accused is entitled to counsel at any 'critical stage of the prosecution', and that a post-indictment line-up was such a 'critical stage' ", Mr. Justice Stewart, for the plurality, said: "We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." *Id.* 406 U. S. at 690. After pointing out that any pre-trial confrontation which might be made immune to attack as a result of the holdings in *Kirby* could still be scrutinized to determine whether it was "unnecessarily suggestive and conducive to irreparable mistaken identification" under *Stovall, supra,* and *Foster v. California,* 394 U. S. 440, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969),[4] Mr. Justice Stewart observed that "When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the

---

**2.** *See also* 41 Fordham L. Rev. 1063, 1069 (1973).

**3.** In Kirby petitioner was stopped for interrogation, carrying property of one "Shard"; arrested and taken to a police station it was learned that Shard had been robbed two (2) days before; he came to the police station and identified petitioner at a confrontation without counsel.

**4.** In Foster the Court found that the suggestive elements in the repeated confrontations the police arranged between the witness and the defendant so undermined the reliability of the eyewitness identification as to constitute a violation of due process of law under the standards enunciated in Stovall v. Denno, *supra.*

prompt and purposeful investigation of an unsolved crime." *Id.* 406 U. S. at 691.

As a result of the decision in *Kirby,* in *Jackson v. State,* 17 Md. App. 167, 300 A. 2d 430, *cert. denied,* 268 Md. 749 (1973), Chief Judge Orth, for the Court of Special Appeals, after first noting that "after a lapse of four years we are told that what we so clearly saw in *Wade* and *Gilbert* was not really there," stated:

> "The decision of this Court that the holdings of *Wade* and *Gilbert* were to be applied to pre-indictment as well as post-indictment confrontations was predicated upon our belief that such application was constitutionally compelled. Now that the Supreme Court [in *Kirby v. Illinois*] has made clear that our belief was ill founded, we abandon our position." *Id.* 17 Md. App. at 171-72, 300 A. 2d at 434.

After pointing out what the Court in *Kirby* said "about the constitutional right to counsel at pre-trial confrontations was not to suggest that abuse of identification procedures in the course of a criminal investigation were beyond the reach of the federal constitution," Judge Orth observed that "This in substance was the firmly established law of Maryland before the *Wade-Gilbert-Stovall* trilogy." He further stated for the court:

> "We concluded in *Smith and Samuels,* at 65, that *Wade* and *Gilbert* affected the rules previously followed in this State with respect to the admissibility of evidence as to a judicial or extra-judicial identification only as to personal confrontations between the witness and the accused declared by those opinions to be illegal by the absence of counsel. We held that the exclusionary rule of *Wade* and *Gilbert* applied to any pretrial confrontation which was in violation of due process of law under *Stovall. Id.,* at 65-66. We do not depart from that holding." *Id.* 17 Md. App. at 173, 300 A. 2d at 434.

The decisions have thus "come full circle" from the evidentiary test applicable to such pre-trial confrontations as announced in *Basoff v. State, supra,* except that now the "circumstances precluding suspicion of unfairness or unreliability" are placed upon constitutional "due process" grounds.

Appellants here concede that the holdings in *Kirby v. Illinois, supra,* as followed in *Jackson v. State, supra,* are dispositive of any argument that the identification procedure here followed was in violation of their rights under the sixth amendment to have counsel present at the confrontation; they argue, however, that though not invalid for want of counsel, the pre-trial one-on-one identifications were in violation of their "due process" rights.

In *Neil v. Biggers,* 409 U. S. 188, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court held that although a station-house identification of the respondent may have been "suggestive," under the totality of the circumstances there was "no substantial likelihood of misidentification" and that the evidence of the pre-trial identification need not have been excluded. Seven months after a rape (and prior to *Stovall*) the victim identified the respondent at a police station in a one-on-one confrontation. Following the assault she had given a description of the assailant and in the interval had viewed suspects both in her home and at the police station — some in line-ups, others in show-ups — as well as inspecting between 30 and 40 photographs, but had identified no one. The police had requested the victim to come to the station where the show-up consisted of the respondent, accompanied by two detectives, being walked past her, and at her request, being directed to say "Shut up or I'll kill you." The identification she then made was positive. A line-up had not been arranged because the police could not find anyone in either the jail or the juvenile home who fit the respondent's "unusual" physical description.

After reviewing the holdings in *Stovall v. Denno, supra,* in *Simmons v. United States,* 390 U. S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968) (which held that a pre-trial

identification by photographs would be set aside only if the photographic identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"), in *Foster v. California*, 394 U. S. 440, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969) (where the witness failed to identify Foster in a three-man line-up, was still "not sure" in a one-on-one meeting at the police station and then, a week later, identified the petitioner in another line-up, and such "suggestive elements in the repeated confrontations" were held to violate "due process"),[5] and in *Coleman v. Alabama*, 399 U. S. 1, 90 S. Ct. 1999, 26 L.Ed.2d 387 (1970) (where the identification was found to have been made "entirely based upon observations at the time of the assault and not at all induced by the conduct of the line-up"), Mr. Justice Powell, who delivered the majority opinion for the Court, stated:

> "Some general guidelines emerge from these cases as to the relationship between suggestiveness and misidentification. It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of *irreparable* misidentification.' Simmons v. United States, 390 U. S., at 384, [19 L.Ed.2d 1247, 88 S. Ct. 967.] While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, *with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself.* (Footnote omitted). It is the *likelihood of misidentification which violates a defendant's right to due process,* and it is this which was the basis of the exclusion of evidence in *Foster.* Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive

---

5. *See* n. 4, *supra.*

ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* makes clear, *the admission of evidence of a showup without more does not violate due process.*" *Id.* 409 U. S. at 198. (Emphasis supplied.)

\* \* \*

" . . . The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter the police from using a less reliable procedure where a more reliable one may be available, not because in every instance the admission of evidence of such a confrontation offends due process. *Clemons v. United States*, 133 U. S. App. D. C. 27, 48, 408 F. 2d 1230, 1251 (1968) (Leventhal, J., concurring); cf. *Gilbert v. California*, 388 U. S. 263, 273, [18 L.Ed.2d 1178, 87 S. Ct. 1951] (1967); *Mapp v. Ohio*, 367 U. S. 643, [6 L.Ed.2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933] (1961)." *Id.* 409 U. S. at 199.

Concerning the factors to be considered within the "totality of the circumstances" in such identification procedures, he stated: .

"We turn, then, to the central question, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered, in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* 409 U. S. at 199.

In *Billinger v. State,* 9 Md. App. 628, 267 A. 2d 275, *cert.*

*denied,* 259 Md. 729 (1970),[6] an accidental confrontation [6a] took place in the emergency room at a hospital where the victims of a robbery had been taken for treatment and Billinger, with a seriously cut hand, had approached a police officer about one and one-half blocks from the scene of the crime and asked that he be taken to the nearest hospital. At the hospital another officer noticed that Billinger answered the description given by the victims and brought this fact to their attention; they there made a positive identification of him. Judge Orth, again writing for the Court of Special Appeals, although recognizing that the *broad language* in *Wade* and *Gilbert* did not limit their applicability to post-indictment confrontations, distinguished the facts in *Billinger* from the application of the holdings in *Wade* based upon a "prompt confrontation" — within minutes after the commission of the crime — and following the reasoning in *Russell v. United States,* 408 F. 2d 1280 (D.C. Cir.), *cert. denied,* 395 U. S. 928 (1969); *Wise v. United States,* 383 F. 2d 206 (D.C. Cir. 1967), *cert. denied,* 390 U. S. 964 (1968); and *Bates v. United States,* 405 F. 2d 1104 (D.C. Cir. 1968), held:

" . . . [I]t is not improper for the police promptly to display a freshly apprehended suspect for identification by one who minutes before had been the victim of or an eyewitness to the commission of a crime. . . .

Of course the confrontation in the present case would be illegal, independent of the right to counsel, if it was conducted in such manner as to deny due process of law. And it would violate due process of law if it were so unnecessarily suggestive as to be conducive to irreparable mistaken identification. But although a single-suspect or one-on-one confrontation may be suggestive, we believe that *prompt on the scene confrontations,*

---

6. Decided prior to Kirby v. Illinois and Neil v. Biggers.

6a. *See also* Smith v. State, 6 Md. App. 23, 249 A. 2d 732, *cert. denied,* 254 Md. 720 (1969), where there was an unarranged confrontation at a police station two and one-half hours after a robbery.

> *absent special elements of unfairness, do not entail*
> *due process violations." Id.* 9 Md. App. at 636, 267
> A. 2d at 280. (Emphasis supplied.)
>
> " . . . We see no substantial likelihood of irreparable
> misidentification in this confrontation. On the
> contrary the police action fostered 'the desirable
> objectives of fresh, accurate identification which in
> some instances may lead to the immediate release
> of an innocent suspect and at the same time enable
> the police to resume the search for the fleeing
> culprit while the trail is fresh.' *Bates v. United*
> *States,* 132 U. S. App. D. C. 36, 405 F. 2d 1104 (1968)
> at 1106." *Id.* 9 Md. App. at 636-37, 267 A. 2d at 280.

To the same effect *see Spencer v. State,* 10 Md. App. 1, 267
A. 2d 323, *cert. denied,* 259 Md. 736 (1970),[7] where the
appellant, caught hiding in the bushes across the street from
the home of the victim of an assault, was identified by her,
while standing on the porch of her home, about 15 to 20 feet
from the appellant, when the police brought him out of the
bushes and asked, "Is this the man?"

In *Davis v. State,* 13 Md. App. 394, 283 A. 2d 432 (1971),
*cert. denied,* 264 Md. 746 (1972), a filling station employee,
suspected the "evil intentions" of a group of young men
loitering near the station and "paid them close mind"; two of
the group entered the station, loitered there for about five
minutes and were then joined by a companion who drew a
gun and robbed the employee. A description of the assail-
ants and in particular the clothing worn by each was given
to the police by the victim. Approximately 20 minutes
after the robbery the police returned to the filling sta-
tion with a single person seated inside the police cruiser;
when asked to look in the window "to see if the person
inside was one of those who had robbed him", the em-
ployee made a positive identification.

After quoting from *Billinger v. State, supra, Spencer v.*
*State, supra, Stovall v. Denno, supra,* and *Bates v. United*

---

7. Also decided prior to Kirby and prior to Biggers.

*States, supra,* Judge Carter, for the Court of Special Appeals, said:

"We therefore conclude that under the principles enunciated in *Stovall* and followed in *Bates, Billinger,* and *Spencer,* the confrontation of the suspect by the victim at the scene of the crime within 30 minutes of the occurrence under the totality of the circumstances in this case was not unnecessarily suggestive and conducive to irreparable misidentification. In so holding we are not unmindful of the special emphasis which the appellant places on the circumstance that at the time he was identified, he was the sole occupant of a police cruiser and was identified by the victim looking at him through the vehicle's window. He contends that the victim's viewing of him under these circumstances was in itself unnecessarily suggestive and conducive to misidentification. We disagree. While a person who is in police custody and is singly exhibited to an eyewitness to the crime undoubtedly creates a suggestive situation, the fact that his police custody involves being placed in a patrol wagon as the sole occupant thereof rather than simply being in the physical presence of a police officer would seem to make little if any difference so far as the extent of the suggestiveness is concerned. In both situations the suspect is alone in police custody and the police are in effect saying to the witness, 'We have apprehended this person because we believe he may possibly be the one who committed the crime. Look at him and tell us whether you can identify him as the culprit.' Furthermore, in *Bates v. United States* [*supra*] the Court held that the viewing of a suspect while he was the sole occupant of a patrol wagon did not make the identification a violation of due process under the rationale of *Stovall.* We likewise conclude that the same circumstance in this case did not make the identification illegal." *Id.* 13 Md. App. at 402-03, 283 A. 2d at 437.

In *Wise v. United States, supra,* a householder and his wife returning to their residence discovered a burglar; he, in "hot pursuit", caught up with him several blocks away; the police placed the appellant under arrest and returned him to the residence where the wife said that "she could not identify [him] by sight, but could by the sound of his voice." Upon speaking the words asked she identified him as the intruder. After observing that a prompt identification procedure "may provide additional and reliable proof against the suspect," and may as well "provide significant proof of an exculpatory nature," the court held that:

> "Here were circumstances of fresh identification, elements that if anything promote fairness, by assuring reliability, and are not inherently a denial of fairness. . . . [W]e do not consider a prompt identification of a suspect close to the time and place of an offense to diverge from the rudiments of fair play that govern the due balance of pertinent interests that suspects be treated fairly while the state pursues its responsibility of apprehending criminals." *Id.* 383 F. 2d at 209-10.

In *Bates v. United States,* 405 F. 2d 1104, (D.C. Cir. 1968) an intruder entered an apartment occupied by two women. Although no lights were on in the room, there was illumination from a nearby street light. The intruder ordered one of the women to cover her head with a sheet and then, at knife point, committed indecent assaults upon the second. The assailant fled when she screamed and was observed by a police officer running from the apartment. Eluding the first policeman, he was apprehended by other officers a short distance away. Placed in a patrol wagon approximately 30 minutes after the reported attack he was driven back to the crime scene; the complainants were asked to come down from their apartment to view the appellant — the sole occupant of the police wagon. One of the women could not identify him although she stated he was of the same "general appearance" as the intruder; the other, who was the victim of his assaults, identified him.

Judge Burger (now Chief Justice of the United States), for the court, stated in his opinion at 1106:

> "There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. . ." *Id.* 405 F. 2d at 1106 (Footnote omitted.)

For the court he stated further:

> " . . . [T]here was no 'substantial likelihood of irreparable *misidentification.*' To the contrary, the police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968); Walker v. United States, No. 20,309 (D.C. Cir., June 17, 1968)." *Id.* 405 F. 2d at 1106. (Footnote omitted.)

*Russell v. United States, supra,* involved the apprehension of a suspect by police officers who received a radio broadcast of his description, where he was apprehended "within three or four minutes" after the reported "break-in" and was driven back to the scene where a citizen who had reported the events identified him.

In upholding this identification procedure the court held:

> " . . . [R]ecognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his 'mind's eye' a face or a figure which he is

hard put to describe adequately in words. Though the image of an 'unforgettable face' may occasionally linger without any translation into words, photographic recall is most often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time. And the conscious attempt to separate the ensemble impression into particular verbalized features, in order to preserve some recollection, may well distort the original accurate image so that it is the verbalized characteristics which are remembered and not the face or the man.

Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * *.' [*Wise v. United States, supra.*] This probability, together with the desirability of expeditious release of innocent suspects, presents 'substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject. We therefore conclude, with some hesitation, that *Wade* does not require exclusion of McCann's [the witness] identification.

This conclusion does not rest on a determination that McCann's [the witness] identification was in fact especially reliable. It rests instead on a general rule that it is not improper for the police immediately to return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before." *Id.* 408 F. 2d at 1284.

Certain courts have established an extremely strict nexus of time between the offense and the show-up confrontation. In *Wise, supra, Russell, supra, United States v. Hines,* 455 F. 2d 1317, 1323 (D.C. Cir.), *cert. denied,* 406 U. S. 975 (1972) and *United States v. Abshire,* 471 F. 2d 116 (5th Cir. 1972) (where the defendant fleeing from an automobile accident was driven back to the scene of the accident), all the

confrontations took place "within minutes" of the offense. In *Caruso v. United States,* 406 F. 2d 558 (2d Cir.) *cert. denied,* 396 U. S. 868 (1969), the defendant was returned to the scene of a bank robbery within 15 minutes; in *United States v. Savage,* 470 F. 2d 948, 949-50 (3d Cir. 1972), the confrontation took place "less than one-half hour" at the bank which was held up; in *Bates, supra,* and in *United States v. Sanchez,* 422 F. 2d 1198, 1200 (2d Cir. 1970) (where the defendant was returned to the robbery scene), the interval was "within 30 minutes"; in *United States v. McCoy,* 475 F. 2d 344, 347 (D.C. Cir. 1973), the defendants were identified "within about 48 minutes" at the robbery scene; in *United States v. Cunningham,* 436 F. 2d 907, 908 (D.C. Cir. 1970), the defendant was identified at the robbery scene within one hour; and in both *Stewart v. United States,* 418 F. 2d 1110 (D.C. Cir. 1969) and *United States v. Perry,* 449 F. 2d 1026 (D.C. Cir. 1971), the show-up identification occurred within one and one-half hours.[8]

Other courts have not been so rigid in applying the proximity of time to the offense; in *Neil v. Biggers, supra,* there was an interval of seven months; in *Kirby v. Illinois, supra,* the confrontation took place two days after the robbery; in *Roper v. Beto,* 454 F. 2d 499, 502-03 (5th Cir. 1971), the identification was made at a police station three days after a rape; in *Johnson v. United States,* 362 F. 2d 43, 47 (8th Cir. 1966), the confrontation took place at a police station five days after a theft; in *United States v. Quarles,* 387 F. 2d 551 (4th Cir. 1967), *cert. denied,* 391 U. S. 922

---

8. For state cases in accord on the promptness of the identification *see,* People v. Floyd, 1 Cal. 3rd 694, 464 P. 2d 64, 83 Cal. Rptr. 608 (1970) (two and one-half hours after the crime); People v. Burns, 270 Cal. App. 2d 238, 75 Cal. Rptr. 688 (1969) (shortly after the crime); People v. Romero, 263 Cal. App. 2d 590, 69 Cal. Rptr. 748 (1968) (one-half hour after the crime); Asber v. State, Del., 253 A. 2d 204 (Super. Ct. 1969) (one and one-half hours after the crime); People v. Moore, 43 Ill. 2d 102, 251 N.E.2d 181 (1969) (shortly after the crime); People v. James, 109 Ill. App. 2d 328, 248 N.E.2d 777 (1969) (shortly after the crime); State v. Sanders, 202 Kan. 551, 451 P. 2d 148 (1969) (one hour after the crime); Commonwealth v. Blackburn, 354 Mass. 200, 237 N.E.2d 35 (1968) (evening of the crime); State v. Sears, 182 Neb. 384, 155 N.W.2d 332 (1967) (two and one-half to three hours after the crime). *See* Note, Pre-Trial Identification Procedures — Wade to Gilbert to Stovall: Lower Courts Bobble the Ball, 55 Minn. L. Rev. 779, 788-89 (1971).

(1968), the defendant was returned to the scene of a bank robbery six days after the offense; in *Hancock v. Tollett,* 447 F. 2d 1323 (6th Cir. 1971), the witnesses identified the defendants respectively eight and ten days after the robbery — at the jail; In *United States ex rel. Rutherford v. Deegan,* 406 F. 2d 217 (2d Cir.), *cert. denied,* 395 U. S. 983 (1969), the identification was made 11 days after the robbery, at the police station; in *United States ex rel. Carnegie v. MacDougall,* 422 F. 2d 353 (2d Cir.), *cert. denied,* 398 U. S. 912 (1970), the identification of a forger took place at a police station three months after the transaction. In each of these cases the evidence of the show-up identification was held to be admissible.

Nor has the place of confrontation — whether at a police station or in a police vehicle — been held to be decisive on the issue of "suggestiveness." In *Neil v. Biggers, supra, Kirby v. Illinois, supra, Roper v. Beto, supra, Johnson v. United States, supra, Hancock v. Tollett, supra, United States ex rel. Rutherford v. Deegan, supra, United States ex rel. Carnegie v. MacDougall, supra, United States ex rel. Anderson v. Mancusi,* 413 F. 2d 1012 (2d Cir. 1969), *United States ex rel. Frasier v. Henderson,* 464 F. 2d 260 (2d Cir. 1972), and in *United States v. Frazier,* 417 F. 2d 1138, 1139 (4th Cir. 1969), *cert. denied,* 397 U. S. 1013, *reh. denied,* 398 U. S. 945 (1970), each of the confrontations took place at a police station and all were held admissible.

In *Bates v. United States, supra, United States v. Perry, supra, United States ex rel. Cummings v. Zelker,* 455 F. 2d 714, 715-16 (2d Cir.), *cert. denied,* 406 U. S. 927 (1972), *Marden v. Purdy,* 409 F. 2d 784, 786 (5th Cir. 1969), and *Davis v. State,* 13 Md. App. 394, 283 A. 2d 432 (1971), *cert. denied,* 264 Md. 746 (1972), *supra,* the suspect was a passenger in a police patrol or a police cruiser and in each case the evidence of the confrontation between the witness and the passenger was held admissible.

Even in those cases in which the suspects were handcuffed, as they were in *Stovall v. Denno, supra, United States v. Hines, supra, United States ex rel. Gomes v. State of New Jersey,* 464 F. 2d 686, 688 (3d Cir. 1972), and in

*United States v. Lee,* 485 F. 2d 1075 (D.C. Cir. 1973), such fact did not render the confrontation procedure "unnecessarily suggestive";[9] similarly, the presence of an unusual number of policemen at the scene has been held not to prevent evidence of such a confrontation from being admissible. *United States v. Hines, supra.*

*Stanley v. Cox,* 486 F. 2d 48 (4th Cir. 1973), involved a one-on-one identification made of the petitioner at police headquarters, within an hour after the last of three robberies of an ice cream store. In holding that such confrontation was not "unnecessarily suggestive", Judge Russell for that Court, after reviewing a number of the cases set forth *supra,* stated:

> " . . . [W]hat all these cases demonstrate is that, in weighing the several relevant factors suggested by Neil v. Biggers, Courts will recognize that '[D]ue process does not require that every pretrial identification of a witness must be conducted under laboratory conditions of an approved lineup' [*Davis v. United States,* 407 F. 2d 846, 847 (4th Cir. 1969)] or show-up, that every case must be resolved on its own unique facts, and that, where after a weighing of all relevant facts surrounding the identification, including the time and place of confrontation, it is concluded that the show-up was not 'unnecessarily suggestive', testimony of the show-up identification is admissible. And we think this is a sound result, which will not invalidate what is, when properly used, a useful identification procedure simply because of the difficulties of applying the relevant rule as stated in *Stovall* to the facts of a particular case." *Id.* 486 F. 2d at 52-53. (Footnote omitted.)

The appellants here urge, as did the petitioner in *Stanley v. Cox, supra,* that we fashion a general rule requiring the

**9.** *See* dictum in Booth v. State, 16 Md. App. 524, 529, 298 A. 2d 478, 481, *cert. denied,* 268 Md. 749 (1973). In Lee the identification of the defendant was made while he was lying "face down" on the floor with his hands "cuffed" behind his back.

exclusion of testimony of all such show-up identifications. As support for such a proposition they cite from the language used in *Neil v. Biggers, supra,* that if a per se rule of exclusion for "unnecessarily suggestive confrontations" were to be adopted it would "deter the police from using a less reliable procedure where a more reliable one may be available", and that such a rule would prescribe that a line-up be the only permissible identification procedure on the basis that it is the "more reliable." Judge Russell, for the Court, in rejecting that argument stated:

> "The basic flaw in this argument is that a prompt show-up has not been found to be a 'less reliable procedure', *provided the 'totality of circumstances' conforms to the rule promulgated in Stovall;* nor did Neil v. Biggers so hold. When employed under circumstances not 'unreasonably unreliable', a show-up identification has been approved consistently, has been declared to have 'great merit' [*United States v. Washington* (447 F. 2d at 312.)], 'insure[s] accuracy' [*Bates v. United States, supra* (405 F. 2d at 1106.)], and 'promote[s] fairness' and enhances 'reliability of the identifications' [*United States v. Wilson* (435 F. 2d at 404-05.)]." *Id.* 486 F. 2d at 54.
>
> . . . .
>
> " . . . While it may be conceded that a line-up is admittedly more reliable than a show-up in most cases, it is not necessarily so in a prompt, quick show-up held under proper circumstances. And this is the basis of the innumerable cases in which prompt confrontations have been found acceptable." *Id.* 486 F. 2d at 54-55.

Without here deciding whether a line-up is a more or less reliable procedure than a show-up — in either one the suspect is equally in police custody and generally under restraint and to that extent it might be argued that custody over the suspect is indicative of suggestiveness — the adoption of such a rule of exclusion would be completely

contrary to the overwhelming weight of authority and we decline to so hold.

In *United States v. Perry, supra,* the Court, after observing that under *Russell, supra,* the redeeming virtue of identifications made on or near-the-scene is their "freshness," promoting both their reliability, and consequently their fairness; and noting that the "trustworthiness of an eyewitness' identification, dependent as it is on sharpness of memory, is apt to lessen with the passage of time," stated:

> "We can no more say that every identification within any particular fixed period is assuredly reliable than we can say that every identification beyond that period is assuredly unreliable. We reject, then, a purely artificial time approach to confrontations of the type under review, and favor instead a standard which gives other factors bearing upon the fidelity of the identification their just due." *Id.* 449 F. 2d at 1032. (Footnote omitted.)

Under the facts in this case we need not establish a rule creating an artificial limit of time within which, after an offense, such confrontation or show-up must be conducted. The "length of time between the crime and the confrontation" — as one of the elements within the totality of the circumstances prescribed by *Neil v. Biggers, supra* — was here minimal. Siegel was brought face to face with the appellants "within approximately ten minutes" of the robbery, at a time when, "without any translation into words, photographic recall is most often ephemeral," [10] Siegel's direct observation of the physical features and wearing apparel of the bandit to whom he had handed the money from his wallet across the hood of his automobile was fresh and vivid. The proximity of time in these circumstances helped to "insure accuracy," [11] "promote[d] fairness" and enhanced "the reliability of the

---

10. Russell v. United States, 408 F. 2d 1280, 1284 (D.C. Cir. 1969).
11. Bates v. United States, 405 F. 2d 1104, 1106 (D.C. Cir. 1968).

identification." [12] The vehicle in which the appellants were riding was stopped by Officer Hojnowski — heading away from the scene of the robbery and approximately one block therefrom — almost immediately after he received a radio broadcast reporting the incident and detailing the description of two white males who were reported in flight, as occurred in *United States v. Miller*, 449 F. 2d 974, 978-79 (D.C. Cir. 1971); in *Harris v. Dees*, 421 F. 2d 1079 (5th Cir. 1970); and in *Russell v. United States, supra.*

To constitute an arrest by detention, without a touching, there must be an intent on the part of the one arresting to arrest. *Rome v. State*, 236 Md. 583, 586, 204 A. 2d 674, 676 (1964); *Price v. State*, 227 Md. 28, 33, 175 A. 2d 11, 13 (1961); *Cornish v. State*, 215 Md. 64, 68, 137 A. 2d 170, 172 (1957). When a person is approached by a police officer and merely questioned about his identity and actions this amounts to no more than an "accosting" and does not constitute an arrest. *Duffy v. State*, 243 Md. 425, 431, 221 A. 2d 653, 656 (1966); *Shipley v. State*, 243 Md. 262, 268, 220 A. 2d 585, 588 (1966); *Jones v. State*, 242 Md. 95, 101, 218 A. 2d 7, 10 (1966).

When the police officer stopped the Chevrolet and had the appellant Forster identify himself, the appellants were not under arrest — even though their freedom of mobility was no doubt restricted — but only had been "accosted" — as the trial court ruled. They were not placed in a police vehicle, were not handcuffed, nor were they required to accompany the police back to the scene of the robbery at Siegel's residence. Rather, as was done in *Spencer v. Turner*, 468 F. 2d 599, 601 (10th Cir. 1972), in *Stidham v. Wingo*, 452 F. 2d 837, 841 (6th Cir. 1971) and in *United States v. Miller, supra,* the witness Siegel was transported by the police to the scene where the vehicle in which the appellants were riding had been stopped.

This "accosting" of the appellants by the police was under such circumstances that it additionally "promoted fairness"

---

12. Stanley v. Cox, 486 F. 2d 48, 54 (4th Cir. 1973); United States v. Wilson, 435 F. 2d 403, 405 (D.C. Cir. 1970); Russell v. United States, *supra*, at 1284; Wise v. United States, 383 F. 2d 206, 209-10 (D.C. Cir. 1967). *See also* Annot., 39 A.L.R.3d 791, 804-08 (1971, Supp. 1973).

by allowing their expeditious release as innocent suspects if they were exonerated at the confrontation, without the necessity of them being taken into custody and transported to a police facility for the staging of a line-up. And at the same time, if they had been there exculpated, such procedure would have permitted the police to promptly resume their search for the fleeing culprits while the trail was fresh.[13]

The appellants also argue, as was urged in *United States v. Hines, supra,* that the presence of a number of policemen at the confrontation scene and the nervousness of Siegel created conditions of "unnecessary suggestiveness." In *Hines* the defendant contended that there were "special elements of unfairness" due to the presence of an unusual number of policemen at the time of the identification, because of a mistaken "policeman-in-trouble" call, the fact that he was in handcuffs when brought before the witnesses, and because of the nervous state of the witnesses. The Court, concerning the allegation of "nervousness", stated: " . . . [S]omething more egregious than nervousness on the part of the eyewitnesses and the presence of handcuffs on the suspect was contemplated when the Court [in *Russell v. United States, supra,* 408 F. 2d at 1284] referred to 'special circumstances of unfairness.' " *Id.* 455 F. 2d at 1328.

Concerning the presence of a number of policemen, the Court stated:

> "The record is unclear as to how many policemen were present in the office. Estimates ran between two or three to twelve. In any event, all of the eyewitnesses testified at trial that neither the additional police, nor their own nervousness for that matter, impeded their ability to recognize appellant Hines. . . ." *Id.* 455 F. 2d at 1328.

As in *Hines, supra,* there is no evidence in this record of

---

**13.** United States v. Perry, 449 F. 2d 1026, 1033 (D.C. Cir. 1971); Russell v. United States, *supra,* 408 F. 2d at 1284; Bates v. United States, *supra,* 405 F. 2d at 1106; Wise v. United States, *supra,* 383 F. 2d at 209.

how many policemen were present (there must have been at least four) since the testimony disclosed only that there were four police cars at or near the scene. Although Siegel admitted that he had been made nervous as a result of the incident, there was no suggestion of hysteria on his part and no evidence that any nervousness "impeded [his] ability to recognize" Foster. En route to the confrontation scene there was no conversation between him and the police officer concerning the suspects, they conversed about his combat experiences in World War II and the fact that never previously had he had a gun pointed directly at him.

Although some suggestiveness is inherent in such a factual situation — the appellants, standing outside the stopped vehicle in the presence of at least four policemen — it is not one of undue suggestiveness, "in view of the countervailing considerations that prompt, on-the-scene identifications are likely to promote fairness, by enhancing the reliability of the identifications, and permit expeditious release of innocent subjects." *United States v. Wilson,* 435 F. 2d 403, 405 (1970), cited with approval in *Stanley v. Cox, supra.* We find from the environment in which the confrontation of the appellants occurred that it was not "unnecessarily suggestive." Such conclusion is buttressed by the fact that even though the appellant Forster was there in the presence of at least four policemen, such fact did not induce Siegel to make an improper identification; he could make no identification of Forster other than to state that he was of the same height as the assailant who had pointed the weapon at him. See *Stanley v. Cox, supra, id.* 486 F. 2d at 53.

*Smith v. Coiner,* 473 F. 2d 877 (4th Cir. 1973), cited by the appellants, is factually inapposite to this case. The show-up identification there was rejected under the "totality of the circumstances" test since the prosecutrix had seen her assailant for "only two seconds" by the light of a flashlight; she had impaired vision, and was not wearing her glasses at the time of the incident and had given, at best, a hazy description of her assailant prior to confronting him five hours after the crime. *See Stanley v. Cox, supra,* 486 F. 2d at 55.

The facts in *Spencer v. Turner, supra,* are almost identical with those in this case. A filling station in Salt Lake City had been held-up, the attendant gave a description of the wearing apparel of his assailant. Approximately 35 minutes after the robbery the police arrested Spencer, who answered the description, as he stopped his automobile at an intersection; the filling station attendant was driven to the scene of the confrontation by the police and made a positive identification. A search of the car disclosed a gun box and shells.

In a per curiam that court stated:

"It is significant here that the identification was closely connected with the robbery itself; it was related in both time and space, and while identifications conducted in this manner, that is, by presentation of the accused to the victim, are not favored, there is no apparent reason for holding that the instant confrontation was either unfair or untrustworthy. The incident occurred at a time when it was important to the accused as well as the state to know whether the appellee should be released or held, and thus we cannot conclude that this hot pursuit identification which occurred on the street soon after the incident violated the Constitution or for that matter was unfair." *Id.* 468 F. 2d at 601.

All the factors prescribed by *Neil v. Biggers, supra,* to be considered within the "totality of the circumstances" in making an appraisal as to whether or not the confrontation "was so unnecessarily suggestive as to give rise to a very substantial likelihood of misidentification" were gratified; there was a minimum "length of time between the crime and the confrontation"; Siegel's vision in the illumination from the outside post-lights on his property and from his position across the hood of his automobile, as he first handed over his wallet and then the money, gave him a sufficiently clear and extended opportunity "to view the criminal at the time of the crime"; the "accuracy of [his] prior description of the

criminal" was supplied by the graphic description he gave the police, both over the telephone and to the first arriving officer, and was confirmed by his in-court testimony; his "degree of attention," as well as the "level of the certainty demonstrated by [him] at the confrontation" were equally established by his cogent, uncompromised testimony.[14]

From our independent examination and appraisal of all the facts, circumstances and environment in connection with the identification procedure followed by the police at the time the witness confronted the appellants we hold that such show-up was not "so unnecessarily suggestive as to give rise to a very substantial likelihood of misidentification,"[15] making the evidence concerning the out of court identification properly admissible.

> *Judgment of the Court of Special Appeals affirmed; costs to be paid by appellants.*

---

**14.** Any inconsistencies between the testimony of Cpl. Litchfield and Officer Nash — in view of the testimony given by Siegel — went only to the weight of the evidence for resolution by the trier of fact. Myers v. State, 237 Md. 632, 206 A. 2d 704 (1965); Curry v. State, 235 Md. 378, 201 A. 2d 792 (1964); Wiggins v. State, 235 Md. 97, 200 A. 2d 683 (1964).

**15.** The terms "unnecessarily suggestive" as used in Stovall v. Denno, 388 U. S. 293, 302, and "impermissibly suggestive" used in Simmons v. United States, 390 U. S. 377, 384, are both used in Neil v. Biggers, 409 U. S. 188, 197-98. It would seem that the two phrases represent different articulations of the same requirement and should be so applied. *See* United States ex rel. Phipps v. Follette, 428 F. 2d 912, 914-15 (2d Cir.), *cert. denied,* 400 U. S. 908 (1970); Stanley v. Cox, *supra,* 486 F. 2d at 50 n. 5.