## JAMES IVORY LAWRENCE v. STATE OF MARYLAND

[No. 1583, September Term, 1980.]

*Decided May 7, 1982.*

The cause was argued before MORTON, MOORE and MASON, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Patricia E. McDonald, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Robert Lazzaro, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

In this case we are asked to decide whether the use of peremptory strikes to eliminate all blacks from the jury was a violation of the Federal and Maryland Constitutions.

James Ivory Lawrence, appellant, was convicted by a jury in the Circuit Court for Baltimore County of first degree murder and the use of a handgun in the commission of a crime of violence. He was sentenced to a term of life imprisonment for the murder conviction, and a concurrent term of fifteen years for the handgun conviction.

## I.

During the impaneling of the jury the State peremptorily struck three black potential jurors. Thereafter, defense counsel made the following objection:

> At this point I would point out the fact we have three black jurors, but they were all stricken by the State, and we would ask the Court to — indicate to the Court that under that situation obviously it prejudices the defendant, and the fact that I object to that.
>
> THE COURT: Well I will overrule the objection for the record.

Appellant argues, in essence, that the prosecution's striking of three out of three black jurors leaving an all white jury, was a violation of the Federal and Maryland Constitutions.

Assuming that the three jurors were stricken solely because they were black rather than because of some specific bias related to the circumstances of the case, this precise issue was considered by the Supreme Court in *Swain v. Alabama,* 380 U.S. 202 (1965). There, the prosecutor struck all six black-potential jurors from the venire. The black defendant was convicted of rape by an all white jury and was sentenced to death. In rejecting the defendant's claim that he was denied equal protection of the law under the Fourteenth Amendment of the Federal Constitution, the Supreme Court said at 380 U.S. 220-222:

The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control.

\* \* \*

It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty.

\* \* \*

Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.

With these considerations in mind, we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge.

\* \* \*

In light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenge to obtain a fair and impartial jury to try the case before the

court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence the motion to strike the trial jury was properly denied in this case.

*Accord Johnson v. State,* 9 Md. App. 143 (1970); *see also Pearson v. State,* 15 Md. App. 462 (1972); *Brice v. State,* 264 Md. 352 (1972); *King v. State Roads Commission,* 284 Md. 368 (1979). We think it evident that *Swain* is dispositive of appellant's assertion that the prosecutor's use of peremptory strikes to eliminate blacks from the jury was a violation of the Federal Constitution.

In ostensible reliance on the cases of *Commonwealth v. Soares,* 387 N.E. 2d 499 (Mass. 1979) and *People v. Wheeler,* 583 P. 2d 748 (Cal. 1978) appellant also contends that the use of peremptory strikes to exclude blacks from the jury is a violation of the Maryland Constitution. In *Wheeler* the defendants were black and the victim was white. The prosecutor struck all black jurors by means of peremptory challenges. Upon conviction the defendants appealed and argued that they were denied their right to trial by an impartial jury under the California Constitution. In *Swain* the issue of using peremptory strikes to eliminate blacks from the jury was adjudicated under the Equal Protection Clause of the Fourteenth Amendment rather than the impartial jury rule under the Sixth Amendment enunciated in *Taylor v. Louisiana,* 419 U.S. 522 (1975). In *Wheeler* the Court assumed that if the issue was presented to the Supreme Court "it would reaffirm *Swain* and reach the same result under the representative cross-section rule as it did under the Equal Protection Clause." *Id.* at 757. For this reason the court determined the issue under California law which provided more protection than *Swain.*

Article I, section 16 of the California Constitution provides, in relevant part: "Trial by jury is an inviolate right

and shall be secured to all. . . ." The Court noted that this provision "does not explicitly guarantee trial by an impartial jury, as does the Sixth Amendment to the Federal Constitution; but that right is no less implicitly guaranteed by our charter, as the courts have long recognized." After reviewing a series of Supreme Court decisions which hold, in effect, that an essential prerequisite to an impartial jury is that it be drawn from a representative cross-section of the community, the Court concluded:

> When a party presumes that certain jurors are biased merely because they are members of an identifiable group distinguished on race, religion, ethnic or similar grounds we may call this group 'group bias' — a peremptory strike on such persons for that reason alone, it not only upsets the demographic balance of the venire, it frustrates the primary purpose of the representative cross-section requirement. *Id.* at 761.

> * * *

> We conclude that the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to a trial by a jury drawn from a representative cross-section of the community under Article I, section 16 of the California Constitution.

> This does not mean that the members of such a group are immune from peremptory challenges: individual members thereof may still be struck on grounds of specific bias as defined herein. Nor does it mean that a party will be entitled to a petit jury that proportionately represents every group in the community: we adhere to the long-settled rule that no litigant has the right to a jury that mirrors the demographic composition of the population, or necessarily includes members of his own group, or indeed is composed of any particular individuals.

> What it does mean, however, is that a party is constitutionally entitled to a petit jury that is as

near an approximation of the ideal cross-section of the community as the process of random draw permits. (Citations omitted).

* * *

. . . [W]e cannot countenance the decimation of the surviving jurors by peremptory challenges on the ground of group bias alone. *Id.* at 762.

Likewise, in *Commonwealth v. Soares, supra,* the defendants were black; the victim of the murder was white, and twelve out of thirteen black potential jurors were peremptorily challenged by the prosecutor. On appeal the defendants claimed that they were denied their right to be tried by an impartial jury. The court followed the *Wheeler* decision and based its holding on the Massachusetts Constitution rather than *Swain.*

Article 12 of the Declaration of Rights of the Massachusetts Constitution provides, in pertinent part: "And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by judgment of his peers, or the law of the land." In delineating the characteristics of the jury contemplated by Article 12, the court in prior cases had stated, among other things, that a "defendant is constitutionally entitled to a jury selection process free of discrimination against his grouping in the community. . . ." *Id.* at 510. Based on this premise, the Court, in holding that the defendants were denied the right to be tried by an impartial jury in violation of Article 12, stated:

[E]xercise of peremptory challenges to exclude members of discrete groups, solely on the basis of bias presumed to derive from the individual's membership in the group, contravenes the requirement inherent in Article 12 of the Declaration of Rights. . . . We view the Equal Rights Amendment as definitive in delineating those generic group affiliations which may not permissibly form the

basis for juror exclusion: sex, race, color, creed or national origin.

*Commonwealth v. Soares,* 387 N.E. 2d at 516. *But see Dopel v. United States,* D.C. App. 434 A. 2d 449, 457-459 (1981) where the Court, in reliance on *Swain,* held that a white defendant charged with murder and rape of a black victim, was not prejudiced by the fact that the prosecutor exercised his peremptory strikes to exclude whites from the jury. The Court noted that Supreme Court decisions requiring representative cross-sections of the community were concerned with the jury pool and not the composition of any particular petit jury. It further observed that the refusal of California and Massachusetts to follow *Swain* was based on state constitutional grounds — which have no application in the District of Columbia.

Consonant with this view *see United States v. Danzey,* 476 F. Supp. 1065 (1979). In that case the prosecutor used three of his first five peremptory challenges against the only three blacks selected for the jury. In explaining why he excluded the black jurors, the prosecutor stated:

> I make it a practice to attempt to exclude as best I can all jurors so that to exclude jurors of the same ethnic background as the defendant. And I do that simply for the reason, although I need not pass any reason for my exercise of peremptories, I do that as a matter of course, no matter who the defendant is or whatever his ethnic background is.

The prosecutor then stated "he would exclude all persons of Irish descent if there were a defendant of that descent and would follow a similar practice if a defendant were of Italian descent." In holding that the use of peremptory challenges to exclude blacks from the jury did not violate the defendant's constitutional right to due process or his constitutional right to trial by an impartial jury of his peers, the Court stated:

> So long as the *Swain* decision remains the law, the act of peremptory challenging blacks is not impermissible. Nor should the admission by the

prosecutor of his reasons for exercising the challenges make them invalid. The *Swain* opinion did not, as defendant contends, merely bar investigation into the prosecutor's motive, but declared his motive irrelevant absent some evidence of systematic discrimination, preventing blacks from serving on juries. *Id.* at 1067.

Although appellant contends the prosecution's exercise of peremptory challenges to exclude blacks from the jury in the present case violated the Maryland Constitution, he did not specify which constitutional provision he relied on as a source for his assertion, but left it to us to find the applicable provision. We oblige. The only applicable provisions of the Maryland Constitution upon which appellant could conceivably obtain the relief granted the defendants in *Wheeler* and *Soares* are Article 21 and Article 24 of the Maryland Declaration of Rights.

Article 24 of the Maryland Declaration of Rights provides "that no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner, destroyed or deprived of his life, liberty or property, but by judgment of his peers, or by the law of the land." The words "judgment of his peers" means a trial by jury, and the words "by the law of the land" means "due process of law according to the course and usage of the common law right." *Wright v. Wright,* 2 Md. 429, 452 (1852). Black's Law Dictionary, p. 1289 (4th Ed. 1968) defines peers as equals. Thus, "trial by a jury of his peers" means "trial by a jury of citizens." In *Pitsenberger v. Pitsenberger,* 287 Md. 20 (1980) the Court of Appeals, in discussing the interplay between Article 24 and the United States Constitution said:

> Preliminarily, it should be pointed out that Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and that Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24.

It is apparent that Article 24 accords appellant no greater rights than the United States Constitution.

Article 21, in relevant part, provides: "That in criminal prosecutions every man hath a right . . . to a speedy trial by an impartial jury." This language is almost identical with the language of the Sixth Amendment of the Federal Constitution which provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . .".

In *Smith v. State,* 276 Md. 521, 527 (1976) the Court of Appeals, in construing Article 21 as it relates to the right of a speedy trial under the Sixth Amendment of the Federal Constitution, said:

> Although this Court has not previously definitively determined the relationship between the two constitutional speedy trial rights, we here conclude that the opinions of the Supreme Court interpreting the Sixth Amendment right to a speedy trial are 'very persuasive, although not necessarily controlling,' as to the proper construction of Maryland's parallel Article 21 right.

*But see* concurring opinion of Judge O'Donnell where he stated that the Supreme Court's decisions interpreting the Sixth Amendment right to a speedy trial were controlling, and it was outmoded to suggest that the Supreme Court's decisions were very persuasive but not necessarily controlling as to the proper construction of Maryland's parallel Article 21 right. *See also Erbe v. State,* 276 Md. 541 (1976). What the Court of Appeals said regarding the proper construction of Article 21 as it applies to the right of a speedy trial, applies with equal force to the proper construction of Article 21 as it applies to an impartial jury.

In *Taylor v. Louisiana,* 419 U.S. 522, 538 (1975) the first case in which the Supreme Court imposed the representative cross-section rule on the states as a fundamental component of the Sixth Amendment of an impartial jury, the Court held that a male defendant's right to an impartial jury was

violated by the State's exclusion of women from jury service.
The Court, however, emphasized:

> [T]hat in holding that petit juries must be drawn
> from a source fairly representative of the commu-
> nity we impose no requirement that petit juries
> actually chosen must mirror the community and
> reflect the various distinctive groups in the popu-
> lation. Defendants are not entitled to a jury of any
> particular composition, but the jury wheels, pools of
> names, panels, or venires from which juries are
> drawn must not systematically exclude distinctive
> groups in the community and thereby fail to be rea-
> sonably representative thereof. *Id.* at 538. (Cita-
> tions omitted).

Inasmuch as appellant does not contend that the jury pool
from which the petit jury was drawn systematically
excluded blacks, the use of peremptory challenges to strike
blacks from the petit jury was not a violation of Article 21
or 24 of the Maryland Declaration of Rights. Although we do
not countenance the practice of using peremptory strikes to
exclude blacks or members of other identifiable groups from
the petit jury, for the reasons stated in *Swain* and *Taylor* and
the decisions of the Maryland Court of Appeals interpreting
Articles 21 and 24, we find no provision of the Federal or
Maryland Constitutions proscribing this practice.

## II.

During the direct examination of a defense witness the
following colloquy occurred:

> Q. When he came back in the bar, what did he
> do?
> A. He said that they had robbed him.
> MR. LAZZARO: Objection, Your Honor.
> THE COURT: Sustained. You can't say what he
> told you.

Although appellant did not pursue this matter at trial, he now argues that the court erred in sustaining the State's objection because the statement of the witness was an "excited utterance" and was admissible as an exception to the hearsay rule. Based on the record before us, we cannot say that the court abused its discretion in sustaining the State's objection to the statement of the witness. If the statement in question was an "excited utterance," appellant did not lay a proper foundation for its admission.

### III.

The final argument of appellant is that the evidence was insufficient because the witness's testimony was unbelievable. It is fundamental that the credibility of witnesses is a matter for the trier of fact and not for this Court. *Koper v. State,* 10 Md. App. 170 (1970).

For the reasons herein stated, we affirm.

*Judgments affirmed.*
*Costs to be paid by appellant.*