PATTERSON, Judge.
Appellant, Marvin Lamar May, was convicted of first degree robbery on January 17, 1985. Code of Alabama § 13A-8-41 (1975). The State submitted proof of four prior felony convictions and appellant was sentenced as a habitual offender to life imprisonment, without parole, in the state penitentiary. Code of Alabama (1975), § 13A-5-9. Appellant raises one issue on appeal, contending that the State systematically excluded blacks from the jury.[1] A detailed account of the facts is, therefore, not necessary for a determination of this cause.
During the empanelling of the jury, the following occurred:
“MR. BLALOCK [defense counsel]: I want to object to the systematic exclusion of the black racial group by the prosecutor at this time. Four strikes out of five have been of the black race. My defendant happens to be of the black race. We would say it’s a systematic exclusion of them by the prosecutor.
“THE COURT: Overruled.
“MR. BLALOCK: Violating the Sixth and Fourteenth Amendments of my client.
“THE COURT: Overruled.”
The State used its peremptory challenges to exclude six blacks and one white from the jury venire. Four blacks remained on the jury which tried appellant.
*1222 At the hearing on appellant’s motion for a new trial, appellant argued that the State has engaged in the practice of systematic exclusion for an extensive period of time. In support of this allegation, defense counsel submitted statistical data compiled from his last ten criminal trials, which covered a two-year time period. These statistics indicated that the State had used a large number of its peremptory challenges to remove blacks from the panel; however, of the ten trials, seven juries contained black jurors, ranging in number from one to eight. Defense counsel in all ten trials struck only white members of the panel and his notes indicated that, in a robbery prosecution, he failed to strike a black individual who had been the victim of a robbery. Appellant argues that these figures satisfy the quantum of proof necessary to establish purposeful invidious discrimination under the Fourteenth Amendment as set forth in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
In Swain the Court extensively reviewed the purpose and history of the peremptory challenge system as it has developed over the last 300 years. The strikes have historically been available to the defense and prosecution without cause and without justification. Id. at 220, 85 S.Ct. at 835. The Swain analysis has been accepted in an overwhelming majority of jurisdictions, see Annot., 79 A.L.R.3d 14 (1977), and supports the peremptory strike system as an essential aspect of jury trial. 380 U.S. at 220-22, 85 S.Ct. at 835-37.
Swain also stated that the systematic use of peremptory challenges to exclude a particular group from juries over an extended period of time amounts to “invidious discrimination for which the peremptory system is insufficient justification.” Id. at 223, 85 S.Ct. at 837. The Court further stated, id.:
“We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes an added significance. ... If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome.”
The data supplied by appellant is clearly inadequate to prove the allegation of systematic exclusion. The heavy burden placed on appellant requires the following:
“At his evidentiary hearing, petitioner must prove on specific facts that [the prosecutor] had a systematic and intentional practice of excluding blacks from traverse juries in criminal cases through the exercise of peremptory challenges, and that this practice continued unabated in petitioner’s trial. The exclusion must have occurred ‘in case after case, whatever the circumstances, whatever the crime and whoever the defendant may be’_ The prosecutor’s use of peremptory challenges in only a few trials is clearly insufficient to state a prima facie case, as would be a pattern of exclusion which occurred for only a few weeks. In short, petitioner must marshal enough historical proof to overcome the presumption of propriety in which Swain clothes peremptory challenges, and thereby show [the prosecution’s] intent to discriminate invidiously.”
Willis v. Zant, 720 F.2d 1212, 1220 (11th Cir.1982) (footnote omitted; emphasis in original). See also United States v. Pearson, 448 F.2d 1207 (5th Cir.1971); Jackson v. State, [Ms. 6 Div. 767, April 9, 1985] (Ala. Crim.App.1985). Ten trials conducted over a two-year period in Jefferson County simply do not constitute sufficient “historical proof to overcome the presumption of pro *1223 priety” established in Swain. We find that appellant has failed to establish that the prosecutor in Jefferson County had used the peremptory challenge system to systematically exclude blacks from serving on juries.
Assuming that a prima facie showing of systematic exclusion could be made, reversal would not be required under the facts of a case such as this. At the eviden-tiary hearing conducted on appellant’s motion for new trial, the prosecutor elected to disclose his strategic reasons for exercising peremptory challenges against the individuals he struck from the venire. We hasten to add that the prosecutor was under no duty to disclose this information because there had been no finding of systematic exclusion which would operate to shift the burden of proof to the State. Swain, 380 U.S. at 224, 85 S.Ct. at 838. The prosecutor articulated racially neutral reasons for exercising the peremptory challenges against each individual struck from the ve-nire.
In Zant, 720 F.2d at 1221, the Eleventh Circuit, indicating two ways in which the State may rebut a prima facie case of systematic exclusion, stated:
“A second way in which the prosecutor may rebut a prima facie case under Swain is .... to show neutral reasons for the striking of all the blacks in petitioner's trial itself. The prosecutor may have had strategic reasons unrelated to race for striking the eleven blacks in [this] case. If so, he may bring them to the district court’s attention and — subject to the caveat above concerning testimony of alleged discrimination after a prima facie case is shown [namely, the caveat that ‘ “testimony from the alleged discriminators should be viewed with a great deal of judicial scrutiny” ’] — the district court could credit this testimony as adequate rebuttal.”
Id. at 1221. In the case at bar the prosecutor maintained a record of the individuals he struck and the reasons why each was struck. The prosecutor referred to this “sheet” as he testified. We have carefully reviewed the reasons articulated by the prosecutor and find each to be a valid racially neutral reason for exercising his peremptory challenges. Thus, if a prima facie case were sufficiently shown, the prosecutor’s testimony would have acted to rebut any inference of systematic exclusion in this case.
II
Appellant argues that the quantum of proof necessary to establish a prima facie case under Swain is virtually impossible to achieve. As we noted in Jackson, supra, at fn. 5:
“Extensive criticism has been directed toward this [Swain ] burden ... In its recent decision of United States v. Chil-dress, the Eighth Circuit found only two successful Swain claims anywhere, State v. Brown, 371 So.2d 751 (La.1979) and State v. Washington, 375 So.2d 1162 (La.1979). However, the burden is not insurmountable. United States v. Carter, 528 F.2d at 850.”
Appellant urges us to adopt a method which allows the defendant to overcome the Swain presumption (that the prosecutor is using his challenges to obtain a fair and impartial jury, 380 U.S. at 222, 85 S.Ct. at 837) based entirely upon the facts of his own case.
Recently several state courts and two federal circuit courts of appeals have moved away from the rigorous standard of Swain and developed a body of law which allows the defendant to contest the prosecution’s use of peremptory challenges based on the facts of his individual case. State court decisions have relied upon provisions of their state constitutions to sanction a case by case test for the use of peremptory challenges. Most notable is People v. Wheeler, 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978), and Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499 (1979). In Wheeler, 148 Cal.Rptr. at 908, 583 P.2d at 767, the California Supreme Court interpreted its state constitution to provide a greater protection to California residents than that provided in *1224 Swain. Wheeler has been understood as holding that counsel may raise the issue of a representative jury composition upon a showing that jurors peremptorily challenged share only one characteristic of group association and that group bias alone formed the basis for challenge. State v. Sims, 639 S.W.2d 105, 108 (Mo.App.1982) (interpreting Wheeler). According to Wheeler once the defendant makes a prima facie showing that there is a substantial likelihood that the prosecution has exercised its peremptory challenges in a discriminatory fashion, the burden shifts to the State to prove that the peremptory challenges were used on grounds other than a group bias. The rule of Swain was expressly abandoned. Wheeler, 148 Cal.Rptr. at 910, 583 P.2d at 768. Soares reaches a similar result based on the Massachusetts state constitution. A Wheeler-type approach has been adopted in several states, see Riley v. State, 496 A.2d 997 (Del.1985); State v. Neil, 457 So.2d 481 (Fla.1984); State v. Gilmore, 199 N.J.Super. 389, 489 A.2d 1175 (1985); and State v. Crespin, 94 N.M. 486, 612 P.2d 716 (1980), and specifically rejected in a majority of other jurisdictions, see State v. Wiley, 144 Ariz. 525, 698 P.2d 1244 (1985); People v. Fields, 697 P.2d 749 (Colo.App.1984); People v. Smith, 622 P.2d 90 (Colo.App.1980); State v. Stewart, 225 Kan. 410, 591 P.2d 166 (1979); Lawrence v. State, 51 Md.App. 575, 444 A.2d 478 (1982), aff'd, 295 Md. 557, 457 A.2d 1127 (1983); State v. Sims, 639 S.W.2d 105 (Mo.App.1982); Nevius v. State, — Nev. —, 699 P.2d 1053 (1985); Commonwealth v. Henderson, 497 Pa. 23, 438 A.2d 951 (1981); Batson v. Commonwealth, [Ms. 84-SC-733-MR, Dec. 20,1984] (Ky.1984), cert. granted, — U.S.-, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985); State v. Ucero, 450 A.2d 809 (R.I.1982); State v. Grady, 93 Wis.2d 1, 286 N.W.2d 607 (1979).
At the federal level two circuits have adopted a Wheeler-type approach relying upon the Sixth Amendment of the United States Constitution. In McCray v. Abrams, 750 F.2d 1113 (2d Cir.1984), and Booker v. Jabe, 775 F.2d 762 (6th Cir.1985), the Second and Sixth Circuits respectively concluded that Swain “did not weigh the potential usefulness of the peremptory challenge against the danger that its misuse would obstruct the Sixth Amendment’s express guarantee that each criminal jury must be impartial.” Booker, 775 F.2d at 767. The court in McCray, 750 F.2d at 1130, stated:
“[W]e construe the Sixth Amendment’s provision to require the court to decide each case on the basis of the acts or practices complained of in that very case, and not to require the defendant to show, as Swain requires for an equal protection claim, that those acts or practices have had undesirable effects in case after case....
“Accordingly, we conclude that a defendant may appropriately subject to scrutiny under the Sixth Amendment the prosecution’s use of its peremptory challenges on the basis of its action in his own particular case.”
The state and federal approaches, although based on different rationales, both result in the same type of case by case analysis of the prosecutor’s use of peremptory challenges. Brooks applies this principle equally to defense counsel in the Sixth Circuit, as does Neil in Florida.
It appears that the principal complaint with Swain is the difficulty in proving a prima facie case. As we noted previously, the defense has a heavy burden under Swain and for this reason Swain has been the subject of considerable criticism. See Soares, 387 N.E.2d at 510, fn. 11, for a review of articles expressing criticism of Swain. In a Wheeler-type approach, the burden placed on defense counsel (or the state) is not nearly as great and resort to historical data is not required. It merely need be shown that persons excluded are members of a cognizable group within the meaning of the representative cross-section rule, and that there is a “strong likelihood” that these persons are being challenged because of their group association. Wheeler, 148 Cal.Rptr. at 905, 583 P.2d at 764 (other jurisdictions adopting the Wheeler approach use standards substantially sim *1225 ilar to Wheeler). The burden then shifts to the prosecution (or defense) to prove its peremptory challenges were not racially motivated. If the prosecutor (or defense) fails to rebut the defendant’s (or prosecutor’s) prima facie showing, the jury is dismissed and a new venire called. See Neil, 457 So.2d at 487.
We cite with approval People v. Fields, 697 P.2d 749, 757-58 (Colo.App.1984), wherein the Colorado Court of Appeals, in rejecting a Wheeler approach, stated:
“[W]e perceive that application of the Massachusetts/California approach would present insurmountable problems of workability. Each case would become subject to a ‘trial within a trial’ on such issues as whether each peremptorily challenged juror’s occupation, demeanor, particular statements, negative facial expression or even pupil dilations are ‘proper’ grounds for exercise of a peremptory challenge. Every exercise of a peremptory challenge by the prosecution and the defense of a member of a ‘cognizable group’ would be under attack on appeal. Add to this litigation concerning what constitutes a ‘cognizable group’ and the result would be to impose an intolerable burden on limited judicial resources with only a highly questionable improvement in the quality of justice.”
(For examples of “problems of workability” in the Second Circuit see Schreiber v. Salamack, 619 F.Supp. 1433 (S.D.N.Y.1985) (whites do not constitute a “cognizable group”), and Roman v. Abrams, 608 F.Supp. 629 (D.C.N.Y.1985) (whites do constitute a “cognizable group”).) We also find persuasive the reasoning of the New York Court of Appeals in People v. McCray, 57 N.Y.2d 542, 457 N.Y.S.2d 441, 443 N.E.2d 915 (1982), cert. denied, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983).[2] In declining to adopt a Wheeler approach, the court in People v. McCray, 57 N.Y.2d at 546-50, 457 N.Y.S.2d at 443-44, 443 N.E.2d at 917-19, engaged in a rather lengthy discussion concerning the “subtle and elusive” realities of the uses underlying the peremptory challenge. Although we do not quote the entire passages contained in the cited pages, we are nonetheless in agreement with the rationale expressed by the New York Court of Appeals. We find the following to be especially pertinent:
“To the extent that restrictions on a party’s exercise of the peremptory challenge would require more extensive voir dire to disclose provable racial biases, as well as requiring extensive evidentiary hearings on motions to determine the motives of a party exercising a peremptory challenge, the rule proposed by the defendant would invite the additional delays at trial which our justice system can ill afford. In this era of overcrowded court calendars and scarce judicial resources, we should not alter the trial stage in such a way as to necessitate or encourage unwarranted additional lengthy delays.
“Finally, under the system proposed by defendant there is a danger that the prejudices of prospective jurors may not be recognized by Trial Judges, despite the presence of answers given on voir dire which suggest the possibility of bias. Due to the sensitivity of the subject of racial, religious or sexual prejudice, Trial Judges may be hesitant to strike a juror on this basis, particularly when the juror denies the existence of such bias. As a result, the spectre of racial prejudices influencing jury verdicts may be heightened rather than hindered under the defendant’s proposed formulation. This danger does not exist under a *1226 system where counsel may excuse a limited number of prospective jurors without assigning specific reasons for doing so.”
Id., at 57 N.Y.2d 548-49, 457 N.Y.S.2d at 444, 443 N.E.2d at 918-19. To adopt a case by case approach as approved in Wheeler would effectively destroy the peremptory nature of the challenge. As stated in Swain, 380 U.S. at 221-22, 85 S.Ct. at 836-37:
“To subject the prosecutor’s challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, pro tanto, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterward. The prosecutor’s judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.”
We refuse to adopt a Wheeler -type approach as suggested by appellant, and adhere to Swain’s holding that a defendant is not entitled to a new trial unless and until he is able to produce sufficient proof of systematic exclusion of an identifiable group over an extended period of time. “We intend to preserve the discretionary nature of the peremptory strike.” Jackson, supra.
Even if we were to adopt a Wheeler -type approach, which we do not, reversal would not be required under the facts of this case. The prosecutor articulated valid nonracial reasons for exercising his peremptory challenges and these reasons stand un-rebutted by appellant.
In the case at bar appellant failed to prove his allegations of the systematic exclusion of blacks from Jefferson County juries due to the alleged discriminatory use of peremptory challenges by the prosecutor; therefore, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.

. A similar issue is presently pending before the United States Supreme Court in Batson v. Commonwealth, [Ms. 84-SC-733-MR, Dec. 20, 1984], (Ky.1984), cert. granted, — U.S.-, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985).

. The New York trial courts originally adopted the Wheeler approach, see People v. Kagan, 101 Misc.2d 274, 420 N.Y.S.2d 987 (Sup.Ct.N.Y. County 1975), and People v. Thompson, 79 A.D.2d 87, 435 N.Y.S.2d 739 (1981), which in turn was rejected by People v. McCray. We are cognizant of the fact that the holding and rationale of People v. McCray is no longer controlling in New York, for the New York court’s opinion was rejected by the Second Circuit in McCray v. Abrams, 750 F.2d 1113 (2d Cir.1984). However, we are not bound by the Second Circuit’s holding. We note that the Eleventh Circuit follows the rationale of Swain. See Willis v. Zant, 720 F.2d at 1210, fn. 14.