558 A.2d 441

**Frank Edward GREEN**

v.

**STATE of Maryland.**

**No. 1237, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

June 6, 1989.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County of Annapolis, on the brief), for appellee.

Submitted before BISHOP, ROSALYN B. BELL and WENNER, JJ.

WENNER, Judge.

Appellant, Frank Edward Green, was convicted at a bench trial in the Circuit Court for Anne Arundel County of first degree murder, three counts each of attempted murder, assault with intent to murder, and assault with intent to avoid lawful apprehension, and numerous related offenses.[1]  Appellant was sentenced by the court to four consecutive terms of life imprisonment for the first degree murder and attempted murder convictions.  For the assault with intent to murder and assault with intent to avoid lawful apprehension convictions, appellant was sentenced to three thirty year and three ten year terms of imprisonment, respectively, concurrent with the sentences for attempted murder, and consecutive to all other sentences.[2]  Upon appeal, appellant makes the following assertions:

---

1. Appellant was also convicted of carrying and transporting a handgun, and six counts of use of a handgun in the commission of a crime of violence.  He was convicted of burglary, and two counts each of armed robbery, assault with intent to rob, and theft.  Appellant was also convicted of kidnapping and attempted kidnapping.

2. The court sentenced appellant to a consecutive term of five years imprisonment for the single handgun violation, and six consecutive

I. The convictions for assault with intent to murder and assault with intent to avoid lawful apprehension should merge into the convictions for attempted murder.

II. The court erred when it denied his motion to suppress his statement and the identification testimony of two State's witnesses.

Inasmuch as we agree with appellant's first assertion, we shall vacate the sentences for assault with intent to murder and for assault with intent to avoid lawful apprehension. In all other respects, we shall affirm the judgments of the circuit court.

## Background

In the early evening of September 18, 1986, a Havre de Grace police officer came upon an abandoned van protruding from the inside shoulder into the fast lane of eastbound U.S. Route 40 near the Thomas J. Hatem Memorial Bridge. Within minutes, the officer was joined by Deputy Stephen O. Wagner of the Harford County Sheriff's Department, Robert F. Pyles, Sr., a Toll Facilities officer, as well as other members of the Havre de Grace Police Department. The officers subsequently learned that the van had been reported as stolen.

In the course of the investigation, Officer Pyles left the van to pick up for questioning a black male he had observed walking across the bridge. While returning to the van, Pyles lost control of his vehicle, which struck a concrete barrier in the median strip of Route 40.

---

sentences of twenty years imprisonment for the convictions for the use of a handgun in the commission of a crime of violence. Appellant was also sentenced to two consecutive terms of twenty years imprisonment for the armed robbery convictions, a consecutive term of twenty years imprisonment for the burglary conviction, and two consecutive thirty year terms of imprisonment for kidnapping and attempted kidnapping. The convictions for theft and assault with intent to rob were merged with the convictions for armed robbery.

Wagner and Officer Dennis P. Rittershofer of the Havre de Grace Police Department immediately responded to Pyles' vehicle. Wagner found Pyles slumped over in the front seat of the vehicle, bleeding from the head. Wagner also saw a black male, later identified as the appellant, in the rear seat of Pyles' vehicle.

As Wagner and Rittershofer approached, appellant began to yell and attempted to get out of the vehicle. He was restrained by Rittershofer while Wagner went to the assistance of Pyles. Moments later, Wagner heard a gunshot. Wagner turned and saw appellant with a gun and Rittershofer lying on the ground. Appellant shot Wagner in the arm and fled the scene. Officers Rittershofer and Pyles were found to have suffered gunshot wounds to the head. Pyles died from his wound.

The search for appellant continued into the morning hours of September 19, 1986, when he was apprehended by a number of officers at about 6:30 a.m., near the Harford Memorial Hospital in Havre de Grace. Before he was apprehended, appellant had attempted, at gunpoint, to force a civilian, David E. Rimel, to drive him from Rimel's home in Havre de Grace to Baltimore. When that effort failed, appellant entered the home of Jeffrey C. Briney, Sr., and forced Briney to give him a shirt and the keys to a 1973 Plymouth. Appellant also shot Officer Charles W. Briggs, III, of the Havre de Grace police, in the head and in the back. Briggs had responded to a call from someone who had purportedly seen the appellant.

## I.

██ Appellant first contends that his convictions for assault with intent to murder and assault with intent to avoid lawful apprehension should have been merged with his convictions for attempted murder. The State concedes that appellant's convictions for assault with intent to murder and assault with intent to avoid lawful apprehension merge. We agree.

Under Maryland law, whether two offenses are the same for double jeopardy purposes is determined by applying the "required evidence test." *State v. Holmes*, 310 Md. 260, 528 A.2d 1279 (1987). Nevertheless, the Court of Appeals has recognized that,

> even though offenses may be separate and distinct under the required evidence test, courts occasionally find as a matter of statutory interpretation that the Legislature did not intend, under the circumstances involved, that a person could be convicted of two particular offenses growing out of the same act or transaction.

*State v. Jenkins*, 307 Md. 501, 518, 515 A.2d 465 (1986) (*quoting Brooks v. State*, 284 Md. 416, 397 A.2d 596 (1979)).

In *Jenkins, supra,* the Court said that "[w]here the same single act of assault meets the statutory requirements for different aggravated assaults, courts have not ascribed to legislatures the intent that separate convictions and sentences be imposed." *Id.* 307 Md. at 518, 519, 515 A.2d 465. The Court went on to hold that the offenses of assault with intent to murder and assault with intent to maim, disfigure or disable, when based upon the same act of assault, are not separate for purposes of conviction and sentence. *Id.* at 521, 515 A.2d 465. We think that that rule applies to the circumstances *sub judice,* and hold that separate sentences may not be imposed for appellant's convictions for assault with intent to murder and assault with intent to avoid lawful apprehension. And, for purposes of merger by legislative intent, the offense for the lesser maximum penalty merges into the offense carrying the greater penalty. *Id.* Accordingly, we hold that appellant's convictions for assault with intent to avoid lawful apprehension merge into the convictions for assault with intent to murder.

Where, as here, appellant's convictions were based upon a single act, we also agree with appellant that his convictions for assault with intent to murder should have been merged into his convictions for attempted murder. We therefore hold that appellant's convictions for assault with intent to

murder and assault with intent to avoid lawful apprehension merge with his convictions for attempted murder.

## II.

Appellant next contends that the circuit court erred when it denied his motion to suppress[3] the statement that he gave to the police and the identification testimony of Deputy Wagner and David E. Rimel. We disagree.

## A.

■ Appellant asserts that, because he requested an attorney when he was first apprehended by the police, the statement that he gave to the police subsequent to his arrest, but before counsel was provided him, was obtained in violation of the rule promulgated in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh'g denied*, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981).[4] The record, however, does not support this contention.

There were numerous officers involved in appellant's apprehension and arrest. All but one of those officers testified that appellant did not ask for an attorney when he was apprehended. Furthermore, although appellant was twice advised of his *Miranda*[5] rights at the time of his arrest, he did not assert his right to counsel. One officer recalled a single comment made by appellant, when he was first apprehended, about getting an attorney. The officer said that it was made in the context of repeated assertions

---

**3.** There were essentially two separate hearings on appellant's pre-trial motions to suppress. At issue is the hearing held on July 22–24 and August 11–12, 1987, in the Circuit Court for Harford County, William O. Carr, J., presiding.

**4.** *Edwards* held that a suspect who has "expressed his desire to deal with police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication." 451 U.S. at 484–485.

**5.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, *reh'g denied*, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).

by appellant that he wanted to talk to the press, that he had not done anything wrong, and that he wanted to know why the police had shot him. Upon cross-examination, the officer testified, without objection, that it was his belief that appellant intended to file a civil suit against the police, and that that was why appellant had mentioned getting an attorney. While appellant contended that a civil suit was not his primary motivation for requesting an attorney, and that he had asserted his right to counsel several times, the court found from all the evidence that appellant had not asserted his right to counsel prior to giving a statement to the police. From our examination of the record, we cannot say that that finding was clearly erroneous. Md.Rule 8–131(c). Nor do we find an *Edwards* violation in the circumstances we have just described.

### B.

Appellant also asserts that his extrajudicial identifications by Wagner and Rimel were impermissibly suggestive.

■ The admissibility of an extrajudicial identification, of course, turns on reliability, not on suggestiveness. *Loud v. State,* 63 Md.App. 702, 707, 493 A.2d 1092, *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985). In *Loud,* we enunciated several "reliability factors" to be considered in determining whether pre-trial identification evidence is admissible notwithstanding any suggestiveness in the confrontation:

[t]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* 63 Md.App. at 706, 493 A.2d 1092 *(quoting Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). And, whether an out-of-court identification is reliable depends on the totality of circumstances surrounding it. *Webster v. State,* 299 Md. 581, 601, 474 A.2d 1305 (1984). An

out-of-court identification is not reliable "if the confrontation was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* n. 10 (emphasis omitted).

### Wagner's Identification Testimony

■ After the shootings and the apprehension of appellant, Deputy Wagner was admitted to Harford Memorial Hospital for treatment. At about 6:30 the following morning, Wagner saw a television broadcast showing a mug shot with the name "Frank Green" printed on it, identifying the man as a suspect in the shootings. At about 7:00 a.m., Wagner was taken in a wheel chair to the hospital emergency room for the purpose of looking at a man that the police had in custody. Wagner was wheeled within two or three feet of a treatment table upon which appellant was lying. An officer held appellant's head up to enable Wagner to see his face. Wagner observed that appellant's features, including very dark skin, closely cropped hair, thin build, and approximate height of five foot eight inches to six feet, were similar to those of his assailant, and concluded, "I think its him." At that point, appellant began to shout, "who him, what did I do, I didn't do nothing," and continued to shout while Wagner was being wheeled out of the emergency room. Wagner testified that, based on the tone of appellant's voice, and its quality and volume, he was certain that appellant was the individual he had encountered in Officer Pyles' vehicle. Wagner also said that he would not have identified appellant as his assailant if he had not believed that appellant was the man he had seen in Pyles' vehicle on the previous evening.

The practice of presenting single suspects to persons for the purpose of identification is not *per se* prohibited. *See Foster & Forster v. State,* 272 Md. 273, 323 A.2d 419, *cert. denied,* 419 U.S. 1036, 95 S.Ct. 520, 42 L.Ed.2d 311 (1974).[6]

---

**6.** In *Foster, supra,* the victim of a robbery was transported by the police, within minutes of the incident, to the location of a stopped

Moreover, ". . . the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is still fresh," may justify prompt confrontation. *Id.* 272 Md. at 290, 323 A.2d 419 (citations omitted.)

Balancing the "reliability factors" against any suggestiveness of the confrontation in the circumstances we have just described, we are not persuaded that there was a substantial likelihood of misidentification. Wagner had ample opportunity to observe appellant at the time of the shooting. He saw appellant in Pyles' vehicle as well as standing outside of the vehicle. Wagner also heard appellant speak. The area was well illuminated by street lights, lights of neighboring businesses, and vehicle headlights. Wagner's prior description of appellant was detailed; he described appellant as a black male, with a thin build, approximately five feet ten inches to six feet tall, and wearing a black or dark blue jacket "with a weave type of pattern" and dark pants. And, as previously noted, Wagner's level of certainty at the confrontation was reinforced by hearing appellant's voice. Furthermore, we think that the confrontation, within about fourteen hours of the incident, was justified to ensure that the police not release a suspect from custody.

### Rimel's Identification Testimony

On September 19, 1986, at about 6:00 a.m., a black man accosted David E. Rimel at gunpoint outside of Rimel's home in Havre de Grace. The man told Rimel that he was in trouble and he needed a ride to Baltimore. At first, the man ordered Rimel to be seated in the front passenger seat of Rimel's vehicle, but later ordered Rimel to drive the vehicle when he realized that he couldn't operate a standard

---

"suspect vehicle" for the purpose of making an identification. The court rejected Foster's contention that the identification procedure was improper.

transmission. As they drove through Havre de Grace, Rimel went through a police roadblock, and his vehicle was eventually forced off the road by a police car. The black man fled the scene, and Rimel was soon apprehended. Rimel was taken to a nearby command post that had been set up by the Maryland State Police. An officer showed Rimel a mug shot of appellant for the purpose of identifying the man who had abducted him. Rimel indicated that "It look[ed] like him." Minutes later, when Rimel was questioned by another officer, he identified the man in the photograph as his abductor.

The showing of a single photograph of a suspect to a witness is not, without more, grounds for excluding evidence of an extrajudicial identification. *See Evans v. State*, 304 Md. 487, 499 A.2d 1261 (1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1986). Moreover, exigent circumstances may justify the presentation of a single photograph rather than an array of photographs. *Id.* 304 Md. at 498, 499 A.2d 1261.

Again, balancing any suggestiveness in the photographic identification *sub judice*, against the "reliability factors," we conclude that there was not a substantial likelihood of misidentification. Rimel had sufficient opportunity to view appellant at the time appellant abducted him. He observed appellant in a standing position as well as for several minutes while inside the vehicle. Rimel testified that appellant was at times six to eight inches away from him and that he had looked directly at appellant. Rimel described appellant's clothing, but said that he was not asked to give a general description of appellant. And, as previously noted, Rimel was certain in identifying appellant's photograph. Finally, Rimel made the photographic identification shortly after the crime had been committed, at a time when appellant's apprehension was imperative.

SENTENCES FOR ASSAULT WITH INTENT TO MURDER AND ASSAULT WITH INTENT TO AVOID LAW-

FUL APPREHENSION VACATED. IN ALL OTHER RE-
SPECTS, THE JUDGMENTS ARE AFFIRMED.
COSTS TO BE PAID BY APPELLANT.