582 A.2d 568

**Andre BROCKINGTON**

**v.**

**STATE of Maryland.**

**No. 237, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 30, 1990.

Michael D. Montemarano, Assigned Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before ROSALYN B. BELL, KARWACKI and CATHELL, JJ.

CATHELL, Judge.

The appellant was charged with robbery with a deadly weapon, attempted murder in the first degree, assault, and the use of a handgun in the commission of these offenses. The appellant was tried in the Circuit Court for Baltimore City (Pines, J., presiding) from October 23 to 25, 1989. After the trial, the jury returned a verdict of guilty on the counts charging robbery with a deadly weapon and use of a handgun in the robbery, and not guilty on the attempted murder and related charges. On December 1, 1989, the appellant was sentenced to ten years on the armed robbery charge and five years on the use of a handgun charge, with the sentences to run consecutively, for a total of fifteen years incarceration.

On this appeal, the appellant raises two questions:

I. Whether the trial court erred in permitting the prosecution to proceed upon an information after a finding of a lack of probable cause by the District Court at the preliminary hearing?

II. Whether the trial court erred in denying Appellant's motion to suppress the photo array identification?

We shall affirm the convictions. Relevant facts will be recounted as we address the issues.

I

■ On December 8, 1988, a preliminary hearing was held in the District Court to determine whether probable cause existed. The transcript of that hearing is not before this Court, nor was it before the court below. On January 10, 1989, the charges against the appellant were dismissed in the District Court because of the State's failure to go forward with the charges under the "30–day rule" of Md. Rule 4–221(g).[1] Thereafter, on February 14, 1989,[2] the State sought to proceed under Rule 4–201(c), which allows the State to proceed with a felony case by way of informa-

---

1. Subsection (g) provides that the District Court shall dismiss the case for lack of prosecution, without prejudice, if the State's Attorney has failed to comply with Subsection (f), which requires that, "[w]ithin 30 days after a finding by the court of probable cause," the State's Attorney shall: (1) file a charging document in circuit court; (2) amend the pending charging document or file a new charging document charging the defendant with an offense within the jurisdiction of the District Court; or (3) enter a nolle prosequi or have the charge marked stet. Thus it follows, as a precondition of a "30–day rule" dismissal, there must be a preliminary hearing at which there was a finding of probable cause.

2. This date is well past 30 days after the date of the preliminary hearing, December 8, 1988. In *State v. Graziano*, 71 Md.App. 652, 527 A.2d 52 (1987), however, we held that a filing of an information more than 30 days after the preliminary hearing did not authorize the circuit court to dismiss the information as untimely. We said:

> The obvious and necessary purpose of section [4–221](g) ["the 30–day rule"] is to clear the District Court docket of a case over which that court has no further authority to act and, at the same time, to release the defendant from the charge and from any harmful consequences of it.... It would be anomalous—indeed absurd—for the Rule to require the Circuit Court to dismiss an information or indictment because it was not filed within 30 days after the preliminary hearing but then to permit the State, five minutes after the order of dismissal, to file a new, identical indictment or information.

*Id.* at 655–56, 527 A.2d 52.

tion in the circuit court if, *inter alia,* there has been a preliminary hearing in the District Court, pursuant to Rule 4–221, wherein there was a finding of probable cause. On the first day of the trial, the appellant moved to dismiss the State's information for "lack of jurisdiction" because, it argued, there had not been a finding of probable cause at the preliminary hearing in the District Court on December 8, 1988. To this, the State responded that it was the appellant's burden to establish that the District Court did not find probable cause. The appellant's rejoinder was that he was unable to obtain a copy of the tape of the proceedings for the preliminary hearing. The trial judge denied the motion because there was "nothing before [the court]." [3]

The crux of the appellant's argument is that there was never a finding of probable cause because the transcript of the preliminary hearing of December 8, 1988 was "destroyed"; therefore, the circuit court did not have jurisdiction when the State filed the information. [4]

---

**3.** The following colloquy then ensued:

> MR. PORTER: Your Honor, if the Court would like, in support of this motion, I would—
>
> THE COURT: The Court is not going to like anything.
>
> MR. PORTER: I will put on a witness to say that this tape has been destroyed or was not able to be presented in court because we did—
>
> THE COURT: All right. I'm going to deny the motion. Are we ready for the jury?

We do not agree with the State's contention that this issue is not properly reviewable by this Court because the appellant neither requested nor produced the tape. Our review indicates that the circuit court did not err in determining that there was "nothing before the court." In the context of this case, the Rule 4–201(c) probable cause determination was a District Court matter. As we shall explain, that court had already resolved the issue. It was not the circuit court's function when determining jurisdiction to address further the matter of probable cause. The tape, had it existed, would have been redundant.

**4.** We have said that questions involving the jurisdiction of the lower court, even though not raised or decided below, may be considered *sua sponte* on appeal. *Thompson v. State,* 38 Md.App. 499, 381 A.2d 704 (1978); *Moore v. State,* 15 Md.App. 396, 291 A.2d 73 (1972).

■ Although we do not have the transcript of the preliminary hearing of December 8, 1988, the record before us shows that probable cause was indeed found at that preliminary hearing. The record before the trial court, which is now before us, contains the District Court's findings at the probable cause hearing. It states:

<b>PRELIMINARY HEARING</b>

```
⟨Requested⟩Waived_____State's Attorney Notified_____
Represented by Counsel___✓___Counsel Waived_____
Probable Cause/Defen. Held___✓___Bond/Recog. Continued_____
Bail Set $_____ Full_____%_____Committed in Default_____
No Probable Cause/Dismissed/Defendant Released_____
Judge [signed by the presiding judge] Date 12/8/88
C.D. Filed in Circuit Court_____Papers Forwarded_____
 Date Date
Amended/New C.D. Filed_____
 Date
Dismissed For Lack of Prosecution_____

Judge_____Date_____
```

This order[5] shows that the District Court found that probable cause existed in respect to the preliminary hearing; the word "Requested" is circled and there is a check mark next to "Probable Cause/Defen. Held." Conversely, there was

---

5. At the time the case at bar was heard in the District Court, that Court utilized a procedure for the recordation of its orders that incorporated printed orders on its file folders. These folders were identified as form DC/CRIF (Revised 3/88). The file folders have inscribed thereon appropriate information with places for the trial judge to enroll his findings. In addition to preliminary hearing matters, the folders have sections dealing with the trial court's rulings relative to initial appearances, bail reviews, advice of rights to counsel, waivers of counsel, dismissals, verdicts, sentences, assessment of costs, etc. Additionally, matters relating to nol-prosses, stets, jury trial prayers, witnesses summons, postponement requests, PSIs, competency and responsibility findings, bond forfeitures, post trial hearings, etc., are all recorded on these file folders. While the District Court has, since this case was tried, gone to a system of computer-generated dockets (Pretrial Docket, Charges and Disposition Docket, Trial Docket), the same information is still furnished. Had the parties availed themselves of the information contained in the record, this issue need not have arisen in the first instance.

no check mark by the judge in the box where he would have rendered an order finding a lack of probable cause and a dismissal. The District Court judge then signed the order. There was thus an explicit finding of probable cause that is reflected by the record. All the circuit court needed to do, in order to determine whether there had been a finding of probable cause at the preliminary hearing, was to look at this order.

■ Furthermore, the procedural posture of this case is consistent with a finding of probable cause. After the preliminary hearing on December 8, 1988, the appellant's charges were dismissed by the District Court on January 10, 1989 for lack of prosecution under the "30-day rule." If the District Court had not found probable cause on the December 8, 1988 preliminary hearing, it would have dismissed the case at that time. The District Court, however, did not dismiss the charges on December 8, 1988. The fact that the case survived until January 10, 1989, when it was dismissed under the "30-day rule," necessarily denotes that there was a finding of probable cause during the preliminary hearing.

We therefore hold that the lower court's denial of appellant's motion to dismiss was not erroneous.

## II

The appellant next argues that the trial court erred in denying its motion to suppress the photo-array identification. The victim, Scott Phipps, who was operating a taxi, offered a ride to two occupants of a vehicle which appeared to have been disabled. Upon reaching the destination, an apartment complex, one of the occupants, later identified as the appellant, pulled a handgun and tried to rob Phipps. Phipps pushed the gun away, fled from the taxi, and called the police from a nearby apartment. When the police arrived and located the taxi, an unidentified person was seen in, and then running from, the taxi. In the taxi, the police found a bag with several different forms of identifi-

cation bearing pictures of the appellant. They then placed
the various contents of the bag on the trunk of the taxi for
inspection and inventory. Phipps happened to be standing
nearby and was in a position to observe that inventory,
including the photos.[6] Later that morning, the police
showed Phipps a photo array for identification.[7]

The appellant argues that this identification procedure
was overly suggestive and impermissive so as to mandate a
reversal for two reasons: first, the inventory of the bag
which contained appellant's photos when Phipps stood near-
by tainted the later photo-array identification; second, the
discrepancy in the testimony between a police officer and
Phipps with respect to the method of photo-array identifica-
tion shows that the police were trying to cover up the
"suggestive methods." We disagree.

We discussed in *Loud v. State,* 63 Md.App. 702, 493 A.2d
1092, *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985), the
analysis which is performed to determine the admissibility
of an extra-judicial identification. We stated that the de-
fense has the initial burden of showing some unnecessary
suggestiveness in the procedures employed by the police.
If a *prima facie* taint is established, then the State must
"prove by clear and convincing evidence the existence of
reliability in the identification that outweighs the corrupting
effect of the suggestive procedure." *Id.* at 706, 493 A.2d
1092. In determining reliability, we suggested five factors:

"[t]he opportunity of the witness to view [1] the criminal
at the time of the crime, [2] the witness' degree of
attention, [3] the accuracy of the witness' prior descrip-
tion of the criminal, [4] the level of certainty demonstrat-

---

6. The record does not reflect that any police misconduct contributed
 to Phipps being where he was. Thus, we see nothing suspicious in
 Phipps' being in a position to observe what was displayed on the trunk
 of the taxi. It was his taxi.

7. The photographs discovered in the taxi were not included in the
 array.

ed by the witness at the confrontation, and [5] the length of time between the crime and the confrontation."

*Id.* (quoting *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). These factors are to be considered within the totality of the circumstances surrounding the identification. *See, e.g., Foster v. State,* 272 Md. 273, 323 A.2d 419, *cert. denied,* 419 U.S. 1036, 95 S.Ct. 520, 42 L.Ed.2d 311 (1974); *Green v. State,* 79 Md.App. 506, 558 A.2d 441, *cert. denied,* 317 Md. 356, 563 A.2d 784 (1989).

 Applying these established rules to the case at bar, we first address whether the police inventory search of the bag which contained the appellant's photos tainted the later photo-array identification. We hold that the appellant failed to meet his initial burden of showing suggestiveness by the police. Phipps was not asked by the police during their inventory whether he recognized the man in the photos; he volunteered that information. He testified:

Q. Were the police holding them up there near you?

A. No, they were thrown on the cab.

Q. The police put them there?

A. No, they dumped the stuff out and were going through it.

Q. At any time did they try to put you back or take you from it?

A. No.

Q. Did any policemen ask you was this the guy?

A. No, I just—I looked at them and I said that was the guy. I told them and they said Christ, he must have been—said he must not have been too bright to leave his stuff. . . .

There is insufficient evidence in the record to show that the police either asked or suggested to Phipps to make an identification at that time. In essence, because the police did not take any part in obtaining that identification from Phipps at the scene of the crime, that identification being gratuitously offered by him, there is not even a governmen-

tal action.[8] *See Webster v. State,* 299 Md. 581, 474 A.2d 1305 (1984); *Loud, supra,* at 706, 493 A.2d 1092.

 Even if we were to assume that the appellant met the initial burden of showing suggestiveness by the police, we believe that Phipps' identification, under the totality of the circumstances, was reliable. Throughout the trial, Phipps was certain as to the appellant's identification. First, Phipps testified in detail that he specifically saw the appellant's face before and after he got into the car. Second, when Phipps was asked whether the photo identification on the trunk had an impact on his ability to pick the appellant in the photo array at the station, he said "he [appellant] did not look anything like he looked in the pictures. The pictures are more—he was clean shaven...." Furthermore, there was only a four-hour period between the crime and the photo array at the station and mere minutes between the crime and viewing the photos from the bag.

 We shall next address appellant's second contention with respect to this issue. The appellant maintains that the discrepancy between the testimony of Officer Warble and Phipps is indicative of the police's effort to cover up the "suggestive method." Specifically, the difference in the testimony, as the appellant points out, is that Phipps testified to the layout of the photos as being in a stack, as opposed to the officer's testimony that they were given in a photo array.

During the trial, however, Phipps did in fact testify that the photos were given in the form of an array:

---

8. We do not suggest, however, that it would have been improper if the police were to have asked Phipps to make an identification of those photos from the bag at that time. It is not even necessarily always improper to show a single photograph of a suspect to a witness. *Evans v. State,* 304 Md. 487, 499 A.2d 1261, *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1985). *Accord Green v. State,* 79 Md.App. 506, 558 A.2d 441 (1989). Exigent circumstances may justify the presentation of a single photograph rather than an array of photographs. *Evans,* at 498, 499 A.2d 1261.

Q. Did there come a time when you were shown a photographic array? . . .

A. Yes. . . .

Q. Where were you at when you were shown this [exhibit 1] array?

A. At the station house on Argonne Drive.

Q. When you were shown this array, did anyone say anything to you?

A. I was sitting at a desk for like 20 minutes or 25 minutes and an officer came in and laid pictures out on the table.

Q. What kind of pictures?

A. A photographic array.

It is clear from Phipps' testimony that there is no dispute as to the existence of a photo array. Phipps did, however, testify later that "No, the pictures were stacked on top of each other, and I had to go through them," which may have been somewhat inconsistent with his earlier testimony.[9] Furthermore, Phipps did testify that he had signed the photo array card, "but not with those pictures like the way they have it there." With these statements, the appellant argues that Phipps "neither saw nor signed a photo[-]array card with photos on it."

It has long been established in Maryland that credibility of a witness is for the trier of facts to decide. *McDowell v. State*, 231 Md. 205, 189 A.2d 611 (1963). Thus, this Court will not generally review issues concerning credibility of witnesses. *Barnes v. State*, 57 Md.App. 50, 468 A.2d 1040, *cert. denied*, 299 Md. 655, 474 A.2d 1344 (1984); *Lawrence*

---

9. We presume that Phipps is a layman as to legal terms. We note that the layman's definition of array may well be different from that ascribed to the term by legal practitioners. The various meanings given in the *Random House Dictionary of the English Language* 83 (1983 Unabridged ed.) include: "a large and impressive grouping or organization of things: . . . a large group, number, or quantity of people or things." It is clear that while photo-array has a specific legal connotation, its meanings are broader. In this layman's context, there was not necessarily a conflict within Phipps' testimony, *i.e.*, a stack of photos might well be an array.

*v. State,* 51 Md.App. 575, 444 A.2d 478, *aff'd,* 295 Md. 557, 457 A.2d 1127 (1983); *Kober v. State,* 10 Md.App. 170, 268 A.2d 593 (1970). Phipps' credibility and conflicts, if any, between his testimony and the officers were for the trier of fact to assess and weigh.

For these reasons, we affirm the judgment of the lower court.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.